United States Court of Appeals,

Fifth Circuit.

Nos. 92-3276, 92-3462.

VALENTINE SUGARS, INC., Plaintiff-Appellant,

v.

DONAU CORPORATION, et al., Defendants-Appellees.

Jan. 15, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

A.

Donau Corporation is a marketing corporation owned by Krishan Sudan. In 1984, Sudan approached Gus Baldwin, the manager of Valentine Sugars, Inc., regarding a possible joint venture to produce spray-dried phenolic resins for use as adhesives in the manufacture of waferboard.[1] Valentine already produced phenolic molding compounds. Sudan convinced Baldwin that a dryer could be acquired and installed at the Valentine plant for under one million dollars. He projected that the venture could earn handsome profits by the first quarter of 1985 with an additional $400,000 in working capital. The companies formed the joint venture as Valdon, Inc.

The parties executed a number of agreements on June 29, 1984, under which Sudan was to provide his secret formula for liquid resin; Valentine then would produce the resin and sell it to Valdon. Valentine was to purchase and install a spray dryer on its property, which Valdon was to lease and use to spray dry the liquid resin. Sudan was to provide technical assistance for spray drying and then market the powder though Donau.

---

[1]Waferboard replaces plywood in housing construction. It is made of large wood chips adhered with phenolic resins in powdered form. The resins begin as organic liquids; the spray drying apparatus then transforms them to powder form. Manufacturers use the powder form to produce the waferboard.

The agreements provided for compensation for both parties. Valentine would receive cost plus three percent in making the resin, return of its investment in the spray dryer, monthly rent for the lease of its equipment and premises, and half of Valdon's profits. *After* Valentine had recouped its investment in the dryer, Donau was to receive royalties on the liquid resin sold to Valdon, royalties from Valdon on dry powder produced, commissions from Valdon on sales, and one-half the profits of Valdon.

According to the lease agreement, Valentine was to own the spray dryer and receive a monthly rental of $3,000, plus 1/96 of the investment cost, plus interest from Valdon for a period of eight years. At the end of eight years, Valdon would have the option of purchase at fair market value or extension of the lease term. The parties amended the joint venture agreement to reduce Donau's royalties until Valentine had recouped its investment.

Valentine purchased a used spray dryer and had it installed at a total cost of over $3.5 million. Valentine began manufacturing phenolic resins, and Valdon spray dried them. The resins turned out to be faulty, and Donau was unable to make any sales. According to Sudan, the resins did not work because Valentine refused to purchase additional equipment for use in the drying process.

After the spray dryer lay idle for three years, Valentine entered a Toll Manufacturing Agreement with Georgia-Pacific Corp. whereby Valentine is paid to spray dry Georgia-Pacific's liquid phenolic resins. Between April 1989 and November 1990, Valentine spray dried over thirteen million pounds of powdered resin. Valentine contends it still has not recouped its investment, so Donau is not entitled to royalties. Apparently, Sudan was correct that the dryer needed the additional equipment, as Valentine added the necessary equipment to the dryer before producing powder for Georgia-Pacific.

B.

Valentine filed a diversity action seeking an injunction and damages on January 6, 1986. A year later, the district court stayed the proceedings pending arbitration. The arbitration hearings finally began on June 24, 1991, before a panel of the American Arbitration Association's Commercial Arbitration Tribunal, which issued its two-page award on September 16, 1991. The relevant portion

of the award reads as follows:

> All agreements have been terminated as of January 3, 1986.
>
> Donau Corporation and Krishan Sudan (hereinafter referred to as CLAIMANT) are not entitled to any royalty payment for liquid or spray dried products produced by Valentine Sugars, Inc. (hereinafter referred to as RESPONDENT) or by Valdon prior to January 3, 1986.
>
> RESPONDENT fully owns spray drying equipment formerly owned by Valdon free of any ownership claims by CLAIMANT or Valdon.
>
> RESPONDENT shall pay to CLAIMANT the sum of SIX HUNDRED THOUSAND AND NO/100 ($600,000.00) DOLLARS.
>
> RESPONDENT shall pay to CLAIMANT $0.03/pound for all spray dried product produced after January 1, 1991 on the spray drying equipment formerly owned by Valdon.

Donau and Sudan moved, in the district court, on October 2, 1991, to confirm the arbitrator's award and enter judgment. Valentine moved to vacate, modify, or amend the award. The district court vacated the award, directing the parties to resubmit the matter either to the original arbitration panel or to a new panel for rehearing. On February 24, 1992, after reconsidering its decision, the district court confirmed the arbitration award and entered judgment.

Valentine moved to alter or amend the judgment and filed a notice of appeal on March 23, 1992, after that motion was denied. The district court denied Valentine's motion for reconsideration on April 9, 1992. Donau and Sudan began proceedings to enforce the judgment, as Valentine had not posted bond. On April 16, 1992, these proceedings were stayed, as Valentine apparently had filed for bankruptcy. Valentine filed a second notice of appeal on May 8, 1992; the appeals were combined.

## II.

Valentine first argues that the arbitrators exceed their authority by deciding an issue not before them—the ownership of the spray dryer. Valentine claims that Donau did not properly raise the issue of ownership in the notice of arbitration, as no specific language in that notice raises the issue.[2] If the arbitrator exceeded his power, the district court may vacate the award. *Forsythe Int'l,*

---

[2]Certainly, the broad arbitration clause in the joint venture agreement makes the ownership of the dryer a proper subject of arbitration. That clause calls for arbitration of any dispute "relating to or arising out of" the agreement. When parties include such a broad arbitration clause, they

*S.A. v. Gibbs Oil Co.,* 915 F.2d 1017, 1020 (5th Cir.1990). In determining whether the arbitrator exceeded his jurisdiction, we resolve all doubts in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

The demand for arbitration asked the panel to arbitrate "a dispute concerning a commercial matter involving several contracts signed on the 29th day of June, 1984...." We think this broad language gave the arbitrators the power to do whatever was necessary to resolve any disputed matter arising out of the joint venture. Certainly, as Valentine argued in its brief, the ownership of the spray dryer should be determined with reference to these agreements. In addition, the notice of arbitration requests the arbitrators to "determine the amount due and payable to the Plaintiffs ..." This broad language again seems to request the arbitrators to determine what Valentine owes Donau under the collection of agreements. Given the presumption of arbitration, we hold that the broad language in the notice of arbitration sufficiently placed the ownership of the spray dryer before the arbitration panel.

We sympathize with Valentine, as Donau wrote a broad notice of arbitration that seems to give the arbitrators jurisdiction over anything under the sun relating to the joint venture agreement. The parties agreed to arbitration, however, and must accept the lose procedural requirements along with the benefits which arbitration provides. An arbitrator, in his discretion, may choose not to address an issue without giving the opposing party better notice and an opportunity to respond. Federal law, however, does not impose any requirements as to how specific a notice of arbitration must be. In the absence of a congressional mandate, we will not develop a code of pleading here.

Valentine improperly relies upon *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599 (5th Cir.1989), *cert. denied,* --- U.S. ----, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990). There, we vacated an arbitration award reinstating an employee because the arbitrator exceeded the express limitations of his contractual mandate. In reinstating the employee, the arbitrator took an action forbidden by the underlying collective bargaining agreement. Here,

---

intend the clause to reach all aspects of the relationship. *Neal v. Hardee's Food Sys.,* 918 F.2d 34, 37-38 (5th Cir.1990).

Valentine can point to no contractual provision that removes the ownership of the spray dryer as an issue to be decided by an arbitrator.

Our decision in *Totem Marine Tug & Barge v. North Am. Towing,* 607 F.2d 649 (5th Cir.1979), presents a more similar factual scenario. There, we held that the arbitrator exceeded his power by awarding damages that the plaintiff did not list and admitted were not an issue in the case. We distinguish *Totem Marine* as well. There, the plaintiff admitted to the arbitration panel that the case did not present the issue and, in reliance upon that representation, the defendant failed to put on any evidence for that issue. Here, Donau submitted damage statements to the arbitrators, alleging it owned the spray dryer and never made any representations that the issue was not before the panel.

III.

Next, Valentine argues that we should vacate the award because it is based upon a material mistake of fact. Title 9 U.S.C. § 11(a) allows us to vacate an award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." The Sixth Circuit has held that "where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator "exceeded [his] powers or so imperfectly executed them' that vacation may be proper." *National Post Office v. United States Postal Serv.,* 751 F.2d 834, 843 (6th Cir.1985).

We interpret the term "undisputed" to mean we should look to see whether there is any rational basis for disputing the truth of the fact. *See Anderman/Smith Co. v. Tennessee Gas Pipeline Co.,* 918 F.2d 1215, 1218 (5th Cir.1990), *cert. denied,* --- U.S. ----, 111 S.Ct. 2799, 115 L.Ed.2d 972 (1991) (award must at least be rationally inferable from the agreement). In other words, just because Donau contends it owns the spray dryer does not make ownership disputed; Donau must have some rational basis for its argument. Although Valentine has made a strong argument that no rational finder of fact could determine that Valdon once owned the spray dryer, we need not reach this issue.

Instead, our decision rests upon the statutory requirement that the mistake be "material," or

in the words of the Sixth Circuit, the record must "demonstrate[ ] strong reliance on that mistake" in making the award. Valentine cannot demonstrate with adequate certainty that the arbitrators strongly relied upon the punitive fact that Valdon once owned the spray dryer in making its award.

Valentine contends that the arbitrators relied upon the mistake of fact in awarding the lump sum of $600,000 and the three-cent royalty. Essentially, Valentine contends that the arbitrators liquidated the joint venture, awarding it the ownership of the machine and giving Donau monetary compensation. Although Valentine may be entirely correct, it only provides one theory of how the arbitrators reached their decision. Donau provides alternative explanations for the two awards.

Donau contends the arbitrators may have awarded the lump sum as an award of past damages based upon post-termination royalties due on the Georgia-Pacific contract. Donau argues the royalty award was a reasonable royalty for the use of Donau's technology as provided for after termination of the agreements between the parties. Arbitrators need not provide reasons for their award. *E.g., Antwine v. Prudential Bache Sec.,* 899 F.2d 410, 412 (5th Cir.1990). If the award is rationally inferable from the facts before the arbitrator, we must affirm the award. *See Anderman/Smith.*

Applying *Anderman/Smith* to the circumstances before us, we conclude that we must affirm the arbitrators' award if Donau can provide any rational explanation for the award inconsistent with Valentine's theory that the award had to be based upon Valdon's former ownership of the spray dryer. Finding Donau's explanations rational, we must affirm the decision of the district court; we cannot determine with certainty that the arbitrators based the two awards in question upon Valdon's former ownership of the spray dryer.

## IV.

Valentine also argues the arbitrators had no jurisdiction to decide the case, because they did not take oaths as required by Louisiana law. Further, Valentine charges the award is contrary to public policy. We need not decide either of these issues, as Valentine waived them by not raising them in the district court.

Finally, in desperation, Valentine argues that the arbitrators' award is ambiguous. We consider this claim to be without merit, as the award is sufficiently pellucid when interpreted

rationally.

The judgment is AFFIRMED.