Carolyn **CASTLEMAN**, Plaintiff,

v.

**AFC ENTERPRISES, INC. f/k/a America's Favorite Chicken Company and d/b/a Church's Chicken, Defendant.**

**No. CIV. 3:97–CV–1547–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 1, 1997.

---

Ted B. Lyon, Jr., Bill Zook, Ted B. Lyon & Associates, Mesquite, TX, Richard D. Faulkner, Law Office of Richard D. Faulkner, Dallas, TX, for Carolyn Castleman, Plaintiff.

Gary Duane Sarles, Sarles & Oiumet, James David Cartier, Law Office of James Cartier, Dallas, TX, for AFC Enterprises, Inc. f/k/a America's Favorite Chicken Co. d/b/a Church's Chicken, Defendants.

Will Pryor, Mediation & Arbitration, Dallas, TX, pro se.

### MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court is Defendant's Motion For Summary Judgment, filed September 19, 1997, and pleadings related thereto.

Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment, filed October 20, 1997, seeks affirmative relief. Therefore, the Court treats

this response as it would a cross motion for summary judgment.

## I. FACTUAL BACKGROUND

Plaintiff Carolyn Castleman ("Castleman") was an employee of Defendant AFC Enterprises, Inc. ("AFC"). On January 4, 1994, Castleman, an assistant manager at Church's Fried Chicken restaurant in Grand Prairie, Texas, was in the storeroom when a fry basket fell from a shelf and struck her on the head.

Castleman, alleging that she suffered an on the job injury due to her employers' negligence, filed suit in Texas state court on December 22, 1995 against AFC, AFC's restaurant manager, Sam Thompson ("Thompson"), and AFC's district manager Charles Newsome ("Newsome") (collectively, "Defendants"). After a dispute arose between the parties regarding the AFC's ERISA plan's subrogation rights, AFC removed the case to this Court.[1] On January 13, 1997, all parties agreed to submit Castleman's claims to arbitration. Shortly thereafter, the parties agreed to arbitrate Castleman's claims under the *JAMS/Endispute Streamlined Arbitration Rules and Procedures. See Agreement to Arbitrate,* dated January 22, 1997.

The arbitration hearing was conducted before the Honorable H. Dee Johnson, Jr. (the "Arbitrator") on May 8 and 9, 1997. On May 13, 1997, the Arbitrator entered an award, concluding that Thompson and Newsome were not liable, but finding AFC liable to Castleman for $1,678,622.40 in damages. The Arbitrator found that the design, installation, maintenance, and use of the steel storage shelving in the AFC restaurant was hazardous and constituted an unreasonable risk of harm. The Arbitrator further found that AFC had notice of the hazard and failed to take reasonable steps to reduce or eliminate it.

On September 29, 1997, AFC filed a Motion for Summary Judgment in this Court, alleging that the Arbitrator had violated the Federal Arbitration Act (9 U.S.C. § 10(a)), the Texas General Arbitration Act (Tex. Civ. Prac. & Rem.Code § 171.014(a)), and the Texas common law. AFC requests that this Court vacate the arbitration award and remand the matter for a new arbitration before a new arbitrator or, alternatively, that the Court modify the award, reducing it from $1,678,622.40 to $250,000.

## ■ II. GOVERNING LAW

AFC, in its Reply Brief in Support of Defendant's Motion for Summary Judgment, for the first time urges the Court to review the parties' motions only under the standards of the Texas General Arbitration Act and Texas common law rather than the Federal Arbitration Act.[2] The Court recognizes that the Arbitrator applied Texas substantive law in deciding the Arbitration Award. *See Arbitration Award.* However, this does not preclude this Court from applying federal substantive law in determining the validity of the arbitration award. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Mantle v. Upper Deck Co.,* 956 F.Supp. 719, 726 (N.D.Tex.1997); *EZ Pawn v. Mancias,* 934 S.W.2d 87, 91 (1996).

The *Agreement to Arbitrate* states that parties' rights of appeal or review are to be governed by the arbitration laws of Texas. The *Agreement to Arbitrate* incorporates the *JAMS/Endispute Streamlined Arbitration Rules and Procedures,* which in Rule 20 provides that proceedings to enforce, confirm, modify, or vacate an award will be controlled by and conducted in conformity with the Federal Arbitration Act or applicable state law. In light of the parties' pleadings and because Texas law supports the doctrine of federal preemption, this Court has reviewed the validity of the arbitration itself under the standards set forth in the Federal Arbitration Act. *See EZ Pawn v. Mancias,* 934 S.W.2d 87, 91 (1996) (ruling that when an agreement references both the Texas Act and the FAA, the FAA prevails); *see also, Miller v. Public Storage Mgmt., Inc.,* 121 F.3d 215, 219 (5th Cir.1997).

---

1. Castleman was receiving medical and wage benefits under ERISA until June 1995, when they were terminated by the ERISA plan administrator based on Castleman's alleged refusal to participate in a rehabilitation program and to undertake medical testing.

2. Defendant moved for a summary judgment in this case, alleging that the Arbitrator violated the Federal Arbitration Act, the Texas Arbitration Act, and the Texas common law. Defendant then submitted argument in its Motion For Summary Judgment based upon federal law and federal interpretation of the Federal Arbitration Act.

**■ III. STANDARD OF REVIEW** Review of an arbitration award is extraordinarily narrow. *Antwine v. Prudential Bache Secs., Inc.,* 899 F.2d 410, 413 (5th Cir.1990); *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.,* 918 F.2d 1215, 1218 (5th Cir.1990); *Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 213 (5th Cir.1993). In reviewing an arbitration award, the District Court must determine whether or not the arbitration proceedings were fundamentally unfair. *Gulf Coast Indus. Workers Union v. Exxon Co., USA,* 70 F.3d 847, 850 (5th Cir. 1995). Courts may not vacate an arbitration award based on mere errors in the interpretation or application of the law, nor on mistakes in fact-finding. *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

Section 10 of the Federal Arbitration Act sets forth the exclusive grounds upon which a vacatur may be founded. *McIlroy v. Paine-Webber, Inc.,* 989 F.2d 817, 820 (5th Cir. 1993). These grounds are: 1) where the award was procured by corruption, fraud, or undue means; 2) where there was evident partiality or corruption in the arbitrator; 3) where the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or 4) where the arbitrator exceeded his/her powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a). None of these grounds exist in this case.

**IV. AFC'S CONTENTIONS REGARDING THE ARBITRATION PROCEEDING**
1) AFC contends that Castleman's position statement, her opening statement at the arbitration, and the evidence her counsel presented at the arbitration focused solely on whether the fry basket was improperly stored so as to create a premises defect or unsafe work environment that Defendants were obligated to either warn of or correct. AFC alleges that rather than focusing on the elements necessary to establish a premises liability cause of action against AFC, the Arbitrator focused on the design, installation, maintenance, and use of the shelves themselves. AFC asserts that, in so doing, the Arbitrator exceeded his powers and demonstrated his evident partiality towards Castleman and against AFC.

2) AFC alleges that after Castleman rested her case, but before Defendants could present their case-in-chief evidence, the Arbitrator found to be irrelevant 1) any evidence addressing who put the fry basket on the shelf; 2) whether AFC or either of the individual Defendants knew or should have known that the fry basket was on the shelf on the day of the accident; and 3) evidence regarding the condition of the storage room shelves at the time of the accident. AFC contends that by refusing to hear evidence pertinent and material to the issues submitted for arbitration, the Arbitrator violated the Federal Arbitration, the Texas General Arbitration Act, and the Parties' Arbitration Agreement.

3) AFC also claims that Castleman failed to mitigate her damages by refusing to undergo tests and treatment which could have improved her medical condition. AFC directs the Court's attention to a portion of the hearing in which the Arbitrator asked Castleman's clinical neuropsychologist a series of questions regarding Castleman's ability to make rational medical decisions following the accident. *Transcript of Arbitration Proceedings,* p. 134, 1.13–25, p. 135, 1.1–25. AFC alleges that by suggesting a defense not presented by Castleman, the Arbitrator exceeded his authority and demonstrated partiality.

4) AFC also contends that it was error for the Arbitrator to prevent AFC's attorney from cross-examining Dr. Fulbright, a clinical neuropsychologist, regarding inconsistencies in his testimony with that of Castleman's treating neurologist, Dr. John Cruz, regarding an alleged pre-existing condition that affected Castleman's cognitive abilities.

5) Additionally, AFC alleges that the Arbitrator made a gross mistake of law because Castleman could not establish that (1) AFC put the basket on the shelf; (2) knew it was there; or (3) that the fry basket was there so long that AFC should have discovered or warned of it.

**■ V. ANALYSIS** It is clear from the transcript of the hearing that once the Arbi-

trator made his decision regarding liability, he felt that any further presentation of evidence by AFC would be both irrelevant and cumulative. *See Transcript of Arbitration Proceedings,* at 276–282. The Arbitrator gave a thorough explanation for the reasoning he was employing to support his theory that there existed an inherently dangerous condition with regard to the shelving. *Id.* Further, the Arbitrator elucidated his interpretation of the substantive law regarding the claims before him. *Id.* at 282. The Fifth Circuit has held that if the award is rationally inferable from the facts before the arbitrator, the reviewing court must affirm the award. *Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 214 (5th Cir.1993). Arbitrators need not provide reasons for their award. *Id.* The Arbitrator in the case at hand heard testimony and reviewed ample evidence prior to reaching his conclusion. *See, e.g., Transcript of Arbitration Proceedings,* at 276–282. Thus, the arbitration award meets the *Valentine Sugars* test.

The record demonstrates that the Arbitrator determined that the design, installation, maintenance, and use of the steel storage shelving in question was hazardous, and constituted an unreasonable risk of harm to persons in the area. *See Arbitration Award.* Further, the Arbitrator determined that AFC had notice of the hazard and failed to take reasonable steps to reduce or eliminate the hazard. *Id.* While AFC alleges that the Arbitrator applied the wrong standard in determining premises liability, the Supreme Court has ruled that Courts may not vacate an arbitration award based on mere errors on the interpretation or application of the law, nor on mistakes in fact-finding. *United Paperworkers Int'l Union,* 484 U.S. at 38.[3]

AFC has not met the narrow standard for a showing of evident partiality. The court finds no evidence demonstrating that a reasonable person would have to conclude that the Arbitrator was partial to one party. *See Mantle,* 956 F.Supp. at 726 (citing *Morelite*

*Construction v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 82–84 (2d Cir.1984)). AFC provides the Court with no evidence to substantiate a finding of intentional prejudice by the Arbitrator. *See Mantle,* 956 F.Supp. at 731.

■■■ It is an established principle of arbitration law that the arbitrator is the judge of the relevance and admissibility of evidence introduced in an arbitration proceeding. *Cordis Corp. v. C.R. Bard, Inc.,* 1993 WL 723844 *3, No. H–92–1623 (S.D. Tex Mar. 11, 1993). Arbitration awards will not be set aside due to the arbitrator's refusal to hear evidence unless the exclusion of the contested evidence prevented the parties from receiving a fundamentally fair hearing. *See Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,* 607 F.2d 649, 651 (5th Cir.1979). Refusals to hear evidence that is irrelevant and/or cumulative do not prevent parties from receiving fundamentally fair hearings. *Cordis Corp. v. C.R. Bard, Inc.,* 1993 WL 723844 at *3. Thus, the Arbitrator's decision not to hear additional evidence regarding the condition of the shelving on the day of the accident did not render the arbitration fundamentally unfair.

■■■ The Federal Arbitration Act does not allow an Arbitration Award to be vacated solely on the basis of an error of law or interpretation, but requires some kind of misconduct. *See Robbins v. Day,* 954 F.2d 679, 683 (11th Cir.1992), *cert. denied,* 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992). In the case at bar, the Arbitrator was not guilty of misconduct in his interpretation of the elements of the claim before him or in his refusal to hear certain evidence. *See Gulf Coast Indus. Workers Union v. Exxon Co., USA,* 70 F.3d 847, 850 (5th Cir. 1995) (vacating the arbitration award after finding that the arbitrator lulled Exxon into believing that the evidence in question had been admitted into evidence and then refusing to consider it on the ground that it was unreliable hearsay).[4] Further, as it is clear

---

**3.** Further, the Fifth Circuit does not recognize manifest disregard for the law as a basis for vacating an arbitration award. *See McIlroy v. PaineWebber, Inc.,* 989 F.2d 817, 820 (5th Cir. 1993)(per curiam).

**4.** In fact, the Arbitrator did hear and see evidence regarding the condition of the premises and, specifically, the shelving. *See Arbitration Hearing,* at 168–197. For instance, at one stage of the arbitration, the Arbitrator questioned Thompson extensively regarding who put the fry

that arbitration proceedings are not governed by formal rules of evidence and procedure, it was not unreasonable for the Arbitrator to refuse to let Defendants' counsel examine Newman and Thompson. *See Mantle v. Upper Deck Co.*, 956 F.Supp. 719, 730 (N.D.Tex.1997).

### ■ VI. ANALYSIS OF AFC'S CONTENTIONS REGARDING THE ARBITRATION AWARD

AFC contends that if the Court decides not to vacate the Arbitration Award, the Court should, in the alternative, reduce the award from $1,678,622.40 to $250,000. AFC asserts that the Arbitrator exceeded his authority by finding damages in excess of the alleged cap prescribed by the arbitration agreement.

On January 22, 1997, counsel for Castleman signed the *Agreement to Arbitrate,* which in pertinent part states that the arbitration will be governed by and conducted in accordance with the *JAMS/Endispute Streamlined Arbitration Rules and Procedures.* Section 1 of these rules is entitled "Scope of Rules" and states, "The JAMS/Endispute Streamlined Arbitration Rules and Procedures ·("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS/Endispute and in which no disputed claim or counterclaim exceeds $250,-00, not including interest." The Arbitrator, in the *Arbitrator's Interpretation of Rules and Procedures,* found that the *JAMS/Endispute Streamlined Arbitration Rules. and Procedures,* dated April 29, 1997, and provided to the parties, does not constitute a cap, ceiling, or upper limit on the damages which may be awarded by the Arbitrator, to the extent evidence supports such damages.

■ Section 8 of the *JAMS/Endispute Streamlined Arbitration Rules and Procedures* states that "the Arbitrator will resolve disputes about the interpretation and applicability of these Rules." The Arbitrator's interpretation of the parties' contractual agreement and the applicable rules is subject to judicial review under an extremely limited and deferential standard. *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir.1990). Thus, this Court will not disturb the Arbitrator's interpretation of the Section 1 of the

*JAMS/Endispute Streamlined Arbitration Rules and Procedures.* *See Executone Information Systems, Inc. v. Davis,* 26 F.3d 1314, 1320 (5th Cir.1994) (holding, "we must sustain an arbitration award even if we disagree with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision draws its essence from the contract").

**CONCLUSION** Defendant's Motion For Summary Judgment is **DENIED.** Plaintiff's cross-motion to confirm entry ·of the arbitration award is **GRANTED** pursuant to 9 U.S.C. § 9. Pursuant to the parities' agreement (see Section 20 of the *JAMS/Endispute Streamlined Arbitration Rules and Procedures* ), Plaintiff Castleman is awarded here reasonable costs, including attorneys' fees and expenses incurred in connection with the judicial proceeding. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 245–47, 261–65, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Galveston County Navigation Dist. No. 1 v. Hopson Towing Co.,* 92 F.3d 353, 356 (5th Cir.1996).

Plaintiff's counsel will promptly submit a judgment.

Counsel are **DIRECTED** to confer in an effort to reach agreement on the amount of reasonable costs, including attorneys' fees and expenses, to be paid by Defendant to Plaintiff. If agreement cannot be reached, Plaintiff must file an appropriate motion by noon, December 16, 1997. *See* Federal Rule of Civil Procedure 54(d)(2)(B).

SO ORDERED.

basket on the shelves in question. *Id.* at 190– 194.