**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 22, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 03-20047

———————————

MICHAEL M. PFEIFLE,

Plaintiff-Appellant,

versus

CHEMOIL CORPORATION,

Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
(H-02-CV-101)
------------

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Michael M. Pfeifle appeals the district court's order confirming an arbitration award in favor of Defendant-Appellee Chemoil Corporation. Pfeifle contends that the arbitrators exceeded their contractual authority by awarding Chemoil damages that Pfeifle classifies as consequential and thus violative of the arbitration agreement's proscription of awarding "indirect" damages. Based largely on the highly deferential and

———————————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

narrowly limited standard by which federal courts review the actions of arbitrators, we affirm.

As indicated, the primary question presented in this appeal is whether the arbitrators exceeded their jurisdiction and improperly awarded "indirect" or consequential damages to Chemoil. Pfeifle does not challenge the arbitrators' conclusion that he breached his contract by engaging in unauthorized transactions and subjecting Chemoil to increased margin calls and financial loss. Rather, he challenges only the arbitrators' damage award, arguing that any award of damages based on his unauthorized transactions must be consequential damages, which fall within the arbitration clause's prohibition of awarding "lost profits and indirect damages." Pfeifle relies heavily on the Texas Supreme Court's recent opinion in Miga v. Jensen, 96 S.W.3d 207 (Tex. 2002), reiterating that the "rule in Texas has long been that contract damages are measured at the time of breach, and not by the bargained-for-goods' market gain as of the time of trial." Miga, 96 S.W.3d at 214.

We review a district court's confirmation of an arbitration award de novo. Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994). Our review of the underlying arbitration award is "very deferential." Id.; see also Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th Cir. 1994). An arbitrator's decision must be affirmed "if it is rationally inferable from the letter or the purpose of the underlying agreement," regardless of any alleged error of fact or law.

2

<u>Executone</u>, 26 F.3d at 1320. In determining whether an arbitrator exceeded his jurisdiction, all doubts must be resolved in favor of arbitration. <u>Valentine Sugars, Inc. v. Donau Corp.</u>, 981 F.2d 210, 213 (5th Cir. 1993).

Pfeifle presents a compelling argument under <u>Miga</u> that, because the parties excluded indirect damages, all that remains are general damages which must be calculated as of the date of the breach. Under this reasoning, no subsequent trading losses are recoverable, even if they are the proximate result of the breach. Pfeifle reasons that, just as the subsequent gains at issue in <u>Miga</u> were not recoverable as general damages, the losses Chemoil incurred are not compensable in this case.

As we are not reviewing a merits judgment from a federal district court, but an order confirming an arbitration award, Pfeifle must establish that his claim falls within one of the highly circumscribed grounds for vacatur of an arbitration award. Pfeifle advances only one such ground as the basis for vacatur, that the arbitrators "exceeded their powers" in awarding consequential damages. We conclude that he has not established that vacatur is warranted in this case.

As a threshold matter, Pfeifle's claim is difficult if not impossible to evaluate in light of the necessarily sparse record on appeal in arbitration cases. In this particular case, the arbitrators' award is largely devoid of explanation or analysis. Regarding damages, the arbitrators stated only that "[a]s to the

3

breach of the Contract for opening new positions which required new margin on and after October 12, 2000, Chemoil is entitled to damages" and concluded that "[b]ased on the evidence presented at the hearings, the amount of those damages is found to be $1,000,000." In light of these bald findings, Pfeifle's theory that the damages necessarily account for consequential trading losses is conjectural at best.

Further, Pfeifle's legal argument, that general damages account only for difference-in-value damages and must be calculated as of the instant of breach, has never been applied to the type of breach at issue in this case, i.e., the violation of a direct order to refrain from trading. In Miga and other cases that Pfeifle cites, the general difference-in-value damages were easy to calculate: The "goods" promised were the options at the price fixed in the employment agreement; the breach occurred when the employer failed to deliver the promised goods on the date the employee sought to exercise the options. Both the amount of general damages and the time for calculating those damages were readily determinable. These cases are not truly analogous to the situation presented in the instant case, however.

According to the arbitrators, Pfeifle breached the agreement when he engaged in risky, unauthorized trades that resulted in substantial margin calls, allegedly causing some $9 million in losses to Chemoil. Yet the arbitrators awarded only $1 million in

4

damages. Stated simply, we cannot determine from the arbitrators' decision what, if any, rationale produced their award.

Although the arbitrators were without authority to award indirect damages, they were not required to justify, explain, or otherwise give reasons for the damages that they did award. See, e.g., Valentine Sugars, Inc., 981 F.2d at 214 ("Arbitrators need not provide reasons for their award."); Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co., 918 F.2d 1215, 1219 n.3 (5th Cir. 1990)("[A]rbitrators are generally not even required to disclose or explain the reasons that underlie their decision.") Unlike the arbitrator in Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, 889 F.2d 599 (5th Cir. 1989), the panel here did not expressly award damages for lost profits or trading losses in violation of the arbitration agreement. Even though Pfeifle speculates that, in his case, the arbitrators must have awarded trading losses, there is nothing in their decision akin to the finding of "carelessness" in Delta Queen to support his deduction. Delta Queen Steamboat Co., 889 F.2d at 604. Given the "extraordinary deference" owed to decisions of arbitrators and the rule that any doubts must be resolved in favor of arbitration, Pfeifle's argument fails.

Finally, and perhaps most importantly, even if the arbitrators incorrectly calculated the damage award, an arbitrator's erroneous interpretation of law or facts is not a basis for vacatur of an award. See El Dorado Sch. Dist. No. 15 v. Cont'l. Cas. Co., 247

5

F.3d 843, 847 (8th Cir. 2001)("Our disagreement with an arbitrator's interpretation of the law or determination of facts is an insufficient basis for setting aside his award."); Widell v. Wolf, 43 F.3d 1150, 1151 (7th Cir. 1994)("Over and over we have held that arbitrators' errors —— even clear or gross errors —— do not authorize courts to annul awards.")(internal citation omitted). Courts consistently emphasize the narrowness of judicial review of arbitration awards, describing it as "among the narrowest known to the law," ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995)(quotations omitted), and caution that "when they contract for arbitration, parties should be aware that they get what they bargain for and that arbitration is far different from adjudication." El Dorado, 247 F.3d at 847 (internal quotations omitted). Even if Pfeifle's interpretation of Texas contract law is correct, he has not explained how this warrants vacatur. "Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

Given our standard of review and the fact that the arbitrators' decision does not expressly recognize or account for consequential damages, their award is "rationally inferable." Therefore, the order of the district court confirming the arbitration award in favor of Chemoil Corporation is, in all respects,

6

AFFIRMED.