# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 23, 2012

No. 11-20736

Lyle W. Cayce
Clerk

MORGAN KEEGAN & COMPANY, INC.,

Plaintiff-Appellee

v.

JOHN J. GARRETT; NAN M. GARRETT; HENRY R. HAMMAN; DAVID W.
DAUPHIN; CHRISTY DAUPHIN; WILLIAM C. GOODWIN; HSMCO,
INCORPORATED; VANCE C. MILLER; HENRY S. MILLER, JR.; J.
STEPHEN HARRIS; THE RYRIE FOUNDATION; ELIZABETH RYRIE
ANTHONY; CAROLYN R. HOWARD; CHARLES C. RYRIE; STEVEN
CHARLES ANTHONY TRUST; MATTHEW JOHN ANTHONY TRUST;
CLAIRE HANNAH HOWARD TRUST; EDGAR SMITH; 1989-1
IRREVOCABLE TRUST,

Defendants-Appellants

_____

JOHN J. GARRETT; HENRY R. HAMMAN; DAVID W. DAUPHIN;
WILLIAM C. GOODWIN; HSMCO, INCORPORATED; VANCE C. MILLER;
HENRY S. MILLER, JR. 1989-1 IRREVOCABLE TRUST.; J. STEPHEN
HARRIS; CAROLYN R. HOWARD; CHARLES C. RYRIE; STEVEN
CHARLES ANTHONY TRUST; CLAIRE HANNAH HOWARD TRUST; THE
ESTATE OF EDGAR SMITH; ELIZABETH RYRIE ANTHONY; NAN M.
GARRETT; THE RYRIE FOUNDATION; MATTHEW JOHN ANTHONY
TRUST; CHRISTY DAUPHIN,

Plaintiffs-Appellants

v.

MORGAN KEEGAN & COMPANY, INC.,

Defendant-Appellee

No. 11-20736

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-4308

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

A group of eighteen investors (collectively, "Appellants") alleged that Defendant-Appellee Morgan Keegan & Company, Inc. ("Morgan Keegan") engaged in a fraudulent scheme that induced Appellants to invest substantially in four highly risky mutual funds that Morgan Keegan managed and sold (the "Funds"). Accordingly, Appellants brought claims before an arbitration panel of the Financial Industry Regulatory Authority ("FINRA") pursuant to the Texas Securities Act and for statutory and common-law fraud. The arbitration panel ultimately issued an award in Appellants' favor. Morgan Keegan moved to vacate the award and Appellants moved to confirm. The district court vacated the award and granted Morgan Keegan attorneys' fees and expenses. The court based its decision on a finding that either the award was procured by fraud, or, alternatively, that the arbitration panel exceeded its powers. Because we conclude that these holdings were in error, we REVERSE and REMAND with instructions to enter judgment enforcing the arbitration award.

## I. Facts and Procedural History

In their Second Amended Statement of Claims, Appellants alleged that Morgan Keegan "misleadingly and intentionally overvalued assets held by the Funds and used principal from the Funds to pay purported dividends to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

maintain the illusion that the investments were sound, making the [F]unds essentially operate as a 'Ponzi' scheme." In addition, Appellants asserted that Morgan Keegan "not only made false representations in selling the Funds to the public and in their Prospectus and Registration Statements filed with the Securities and Exchange Commission, [but] they also falsely reported asset values and made false representations regarding the Funds' earnings and dividends to (1) ensure that investors would not redeem their shares and (2) induce investors to reinvest declared dividends into shares of the Funds." Moreover, Morgan Keegan allegedly gave the fraudulent information to its own brokers/financial advisors with the intention that it be disseminated to and relied upon by clients/investors, such as Appellants, to reassure them falsely of the Funds' net asset values and safety despite the ongoing collapse of the housing and credit markets, and to induce further investments in the Funds.

Appellants further asserted that only when Hyperion Brookfield Asset Management, Inc. purchased the Funds and conducted an audit of the Funds' assets did they learn of Morgan Keegan's fraudulent scheme. By that time, however, Appellants had lost substantially all of their capital investments in the Funds. As a result, on February 6, 2009, Appellants brought claims before FINRA pursuant to the Texas Securities Act and for statutory and common-law fraud.[1] Thereafter, both parties signed a FINRA Arbitration Submission Agreement with respect to Appellants' suit (the "FINRA Submission Agreement").

---

[1] Appellants were originally part of a larger group of investors that filed arbitration claims against Morgan Keegan. By agreement of the parties, however, the claims of this larger group were severed into three separate arbitration proceedings. The first proceeding consisted of the claims at issue here (the "Garrett arbitration"). The second proceeding (the "Arispe arbitration"), as well as the third, involved claims of investors not part of the instant appeal.

No. 11-20736

Before the final arbitration hearing, Morgan Keegan filed motions in the arbitration proceeding to declare the claims at issue not subject to FINRA arbitration. Specifically, Morgan Keegan alleged that Appellants' claims were derivative claims, and therefore not subject to FINRA arbitration. In addition, Morgan Keegan argued that Appellants William C. Goodwin ("Goodwin") and J. Stephen Harris ("Harris") were not "customers" of Morgan Keegan so there was no binding agreement to arbitrate their claims. The arbitrators rejected Morgan Keegan's arguments, and the arbitration continued.

At the final arbitration hearing, Dr. Craig McCann ("Dr. McCann"), a securities analyst, provided expert testimony on Appellants' behalf. Dr. McCann testified to, *inter alia*, his calculations of the percentage of losses in the Funds attributable to losses on the Funds' internally-priced securities that Morgan Keegan had allegedly deliberately overpriced. The arbitration panel issued an award in Appellants' favor.

Approximately one week later, Dr. McCann testified in the related Arispe arbitration regarding the Funds' losses due to internally-priced securities. In that proceeding, however, Dr. McCann testified to different numbers than he had testified to in the earlier Garrett arbitration. In doing so, Dr. McCann explained that one of his staff members had failed to account for certain internally-priced securities in the calculations, and that correcting the mistakes had generated different numbers. In addition, Dr. McCann asserted that he had learned of the errors after giving his testimony in the Garrett arbitration. It is undisputed that Dr. McCann's corrected numbers were provided to Morgan Keegan (through the same lawyers) in conjunction with the Arispe arbitration almost two weeks before the award issued in Garrett.

After the arbitration panel issued the award, Morgan Keegan commenced the instant action by filing a motion to vacate the arbitration award. Appellants then moved for an order confirming the award. The two actions were

4

consolidated in the district court.  After a hearing and extensive briefing, the district court entered an order vacating the arbitration award.  According to the district court's opinion, the arbitrators had exceeded their authority because (1) the panel heard claims from Goodwin and Harris, with whom Morgan Keegan had no agreement to arbitrate, and (2) Appellants' claims were derivative claims and therefore were not subject to FINRA arbitration.  *Morgan Keegan & Co. v. Garrett*, 816 F. Supp. 2d 439, 441-42 (S.D. Tex. 2011).  Alternatively, the district court vacated the award on the ground that it was procured by fraud because Dr. McCann had knowingly testified to incorrect numbers, and "the [arbitration] panel based its damages calculations on [Dr. McCann's] knowingly false testimony." *Id.* at 442.  Appellants timely appealed the district court's order.

After prevailing on its motion to vacate the arbitration award, Morgan Keegan moved for an award of attorneys' fees and expenses incurred in the district court proceedings from all Appellants except Goodwin and Harris pursuant to the Attorneys' Fees Provision contained in the Morgan Keegan Client Agreements (the "Attorneys' Fees Provision").  The district court granted Morgan Keegan's motion, and awarded $150,000 in attorneys' fees and $11,374.06 in expenses.  Appellants timely filed a supplemental notice of appeal of the district court's order vacating the arbitration award, and its order granting attorneys' fees and expenses.

## II.  DISCUSSION

### A.    Order Vacating the Arbitration Award

This court "review[s] *de novo* the vacatur of an arbitration award." *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir. 2009). "Judicial review of an arbitration award is extraordinarily narrow. . . ." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990).  It is also "exceedingly deferential." *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004), *overruled on other grounds by Hall St. Assocs., L.L.C. v.*

*Mattel, Inc.*, 552 U.S. 576, 584-86 (2008). Importantly, "[a]n award may not be set aside for a mere mistake of fact or law." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007), *overruled on other grounds by Hall St.*, 552 U.S. at 584-86.

This case involves the vacatur of an arbitration award on two of the four available statutory grounds for vacatur delineated in § 10 of the Federal Arbitration Act (the "FAA"). *See* 9 U.S.C. § 10(a); *Hall St.,* 552 U.S. at 584-86 (2008) (holding that §§ 10 and 11 provide the "exclusive grounds for expedited vacatur" under the FAA). Specifically, the district court concluded that Dr. McCann provided knowingly false testimony to the arbitration panel so that vacatur of the award for fraud under § 10(a)(1) was appropriate. In addition, the district court determined that vacatur of the award was appropriate under § 10(a)(4) because the arbitrators had exceeded their powers by hearing claims not subject to FINRA arbitration, in particular, derivative claims and the claims of Goodwin and Harris with whom Morgan Keegan claimed it had no agreement to arbitrate.[2]

### 1.    The District Court Erred in Holding that the Arbitration Award was Procured by Fraud

Appellants contend that the district court's holding that the arbitration award was procured by fraud was erroneous for the following reasons: there was no clear and convincing proof of fraud, Morgan Keegan should have discovered any alleged fraud on its own, and there was no basis in the record for finding

---

[2] In full, § 10(a)(1) states that an arbitration award may be vacated "where the award was procured by corruption, fraud, or undue means," and § 10(a)(4) states that an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

that McCann's allegedly fraudulent testimony was material to the panel's award.[3]

"Enforcement of an arbitration award may be refused . . . if the award was procured by fraud." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004). This court has recognized that "[f]raud requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence." *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 304 (S.D. Tex. 1997), *aff'd and adopted by*, 161 F.3d 314 (5th Cir. 1998). Furthermore, "[t]here is no doubt that perjury constitutes fraud within the meaning of the [FAA]." *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 n.7 (11th Cir. 1988).

Under Section 10(a)(1) of the FAA, "a party who alleges that an arbitration award was procured by fraud must demonstrate: (1) that the fraud occurred by clear and convincing evidence; (2) that the fraud was not discoverable by due diligence before or during the arbitration hearing; and (3) the fraud materially related to an issue in the arbitration." *Barahona v. Dillard's, Inc.*, 376 F. App'x 395, 397 (5th Cir. 2010) (unpublished); *see also Karaha Bodas*, 364 F.3d at 306. With regard to the third prong, although "[i]t is not necessary to establish that the result of the arbitration would have been different if the fraud had not occurred," *Karaha Bodas*, 364 F.3d at 306-07, section 10(a)(1) does require "a nexus between the alleged fraud and the basis for the panel's decision," *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990). Under the FAA, Morgan Keegan must meet its burden of proof on each of the three

---

[3] Appellants also contend that the error in Dr. McCann's calculations actually favored Morgan Keegan so that it suffered no harm from Dr. McCann's alleged fraud. Morgan Keegan argues that Dr. McCann's error caused it harm because the Garrett arbitration panel heard overstated numbers. We need not resolve this issue given our determination that the fraud argument fails on other grounds.

prongs. *See Barahona*, 376 F. App'x at 398 & n.2 (declining to reach two of the prongs because failure to satisfy even one of the three was dispositive). Because Morgan Keegan failed to satisfy the second prong, we conclude that the district court erred in vacating the arbitration award on fraud grounds and therefore we do not reach the other prongs.[4]

During the Arispe arbitration and prior to the issuance of the award in the Garrett arbitration, Dr. McCann provided revised calculations that show the error now claimed by Morgan Keegan to constitute the "fraud." Those calculations were provided to the same lawyers who represent Morgan Keegan in Garrett. Additionally, the calculations by Dr. McCann – both erroneous and "correct" – used Morgan Keegan's own numbers. Had Morgan Keegan performed its due diligence, the fact that Dr. McCann's calculations failed to include some internally-priced securities would have been discovered even before Dr. McCann testified in the Garrett arbitration, thus obviating any concern that the arbitration panel would rely on erroneous calculations in issuing the award. Accordingly, Morgan Keegan "cannot meet its burden of proof" under the second prong because the grounds for fraud were discoverable by due diligence before or during the Garrett arbitration. *Barahona*, 376 F. App'x at 398. Thus, we conclude that Morgan Keegan presented no evidence that this "fraud" was not discoverable sooner. *See Trans Chem.*, 978 F. Supp. at 306 ("CNMC also fails to meet . . . the three-part test for showing fraud or undue means . . . because it has not shown that TCL's allegedly improper behavior was not discoverable by due diligence before or during the arbitration hearing."). Thus, even if the evidence supported a finding of fraud, which it does not, this prong is unsatisfied; we

---

[4] We note, however, the total absence of any evidence supporting a finding that Dr. McCann committed intentional fraud. The evidence presented supports nothing more than a conclusion that a member of Dr. McCann's staff made a calculation error that he did not discover until after he testified in the Garrett arbitration.

conclude that the district court erred in vacating the arbitration award on fraud grounds and expressly vacate the finding that Dr. McCann committed fraud.

## 2. The District Court Erred in Holding that the Arbitrators Exceeded Their Powers

Even absent a finding of fraud, the district court could properly have vacated the arbitration award if the arbitrators exceeded their powers. *See Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993); *see also Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989) ("Judicial review of arbitration awards is extremely limited. . . . However, federal courts [may] scrutinize the award to ensure that the arbitrator acted in conformity with . . . jurisdictional prerequisites. . . . Where an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy.") (internal citations omitted). That said, "in deciding whether the arbitrator exceeded his jurisdiction, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 355 (5th Cir. 2004), *overruled on other grounds by Hall St.*, 552 U.S. at 584-86 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) ("Where the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority the fact that a court is convinced he committed serious error does not suffice to overturn that decision.'" (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000))).

Regarding judicial review of arbitral decisions, the Supreme Court has instructed that while

> a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute. . . . where the party has agreed to arbitrate, he or she, in effect, has relinquished

much of that right's practical value.  The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances [, such as those enumerated in § 10 of the FAA].

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

Here, the undisputed evidence proves that the parties had an agreement to arbitrate.  Appellants' Standard Client Agreements with Morgan Keegan provide that "all controversies between the undersigned and Morgan Keegan (or any of Morgan Keegan's present or former officers, directors, agents or employees) which may arise from any account or for any cause whatsoever, shall be determined by arbitration."  This broad arbitration provision further states that "[a]ny arbitration under this agreement shall be before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc., or an arbitration forum provided by any other securities exchange or organization of which Morgan Keegan is a member, and in accordance with the rules of such organization."[5]

In addition, after the instant dispute arose, both sides – including Goodwin and Harris – agreed to the FINRA Submission Agreement with respect to Appellants' suit.  In doing so, the parties agreed to "submit the present matter in controversy, as set forth in the . . . statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure."  Thus, it is clear that the parties expressly agreed to abide by the FINRA Rules,[6] which provide at Rule 12409 that "[t]he panel has

---

[5] Effective as of 2007, the National Association of Securities Dealers, Inc. (the "NASD") joined with the member regulation enforcement and arbitration operations of the New York Stock Exchange (the "NYSE") to create FINRA.  Morgan Keegan is a member of FINRA.

[6] The parties do not dispute that they agreed that arbitration would be conducted under the FINRA Rules.  The FINRA Rules applicable here are contained in the FINRA Code of Arbitration Procedure for Customer Disputes (the "Code").

the authority to interpret and determine the applicability of all provisions under the Code.    Such interpretations are final and binding upon the parties." Accordingly, because the parties agreed to submit the instant issues to arbitration, we may only set aside the arbitration panel's decision in "very unusual circumstances." *First Options*, 514 U.S. at 942.    The potentially "unusual circumstance[]" at issue is whether the arbitration panel "exceeded [its] powers" under § 10(a)(4).    We conclude that it did not.

The district court erroneously held that the arbitrators exceeded their authority by arbitrating derivative claims and Goodwin's and Harris's non-"customer" claims.    In doing so, the district court impermissibly premised its decision to vacate upon finding error in the arbitration panel's conclusion that Appellants' claims were not derivative and that Goodwin's and Harris's claims were "customer" claims.    The high standard for the district court to vacate the arbitration panel's award on the merits was unmet here.    *See, e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1767 (2010) (noting that a party seeking vacatur of an arbitration award "must clear a high hurdle," and that "in order to obtain that relief . . . [i]t is not enough . . . to show that the [arbitration] panel committed an error—or even a serious error"); *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987) ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. . . . Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 637 (5th Cir. 2012) ("[A] court may not decline to enforce an award simply because it disagrees with the arbitrator's legal reasoning.").

As stated above, FINRA Rule 12409 vested the arbitration panel with "the authority to interpret and determine the applicability of all provisions under the

Code." Thus, it was clearly within the arbitration panel's scope of authority to decide whether, under the FINRA Rules, Appellants' claims were derivative and Goodwin and Harris were "customers" for purposes of arbitration. The arbitration panel determined that Appellants' claims were not derivative and that Goodwin and Harris were "customers," thereby subjecting the claims to FINRA arbitration under the Code. Because we conclude that the arbitration panel did not exceed its powers in reaching these conclusions, we decline to reach the merits of Morgan Keegan's assertions that Appellants' claims were derivative or that Goodwin and Harris were not customers. The district court erred in holding otherwise.

**B.    Award to Morgan Keegan for Attorneys' Fees and Expenses**

Reversal of the district court's order vacating the arbitration award necessitates reversal of its order awarding attorneys' fees to Morgan Keegan for prevailing in the district court proceedings. Because we reverse the district court's vacatur of the arbitration award in favor of Appellants, Morgan Keegan is not entitled to attorneys' fees.

### III.  CONCLUSION

For the reasons discussed above, we REVERSE and REMAND with instructions to enter judgment enforcing the arbitration award.