**ANDERMAN/SMITH OPERATING CO.,**
Plaintiff-Appellee,

v.

**TENNESSEE GAS PIPELINE CO.,**
Defendant-Appellant.

No. 90-1515
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1990.

Rehearing and Rehearing En Banc
Denied Jan. 17, 1991.

---

Ernest G. Taylor, Jr., Kathryn H. Hester, W. Whitaker Rayner, Watkins, Ludlam & Stennis, Jackson, Miss., Daniel Joseph, Randall L. Sarosdy, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for defendant-appellant.

Alan B. Cameron, Jack W. Brand, Kenneth Harmon, Gerald, Brand, Watters, Cox & Hembleben, Jackson, Miss., for plaintiff-appellee.

Before JOHNSON, SMITH, and WIENER, Circuit Judges.

JOHNSON, Circuit Judge:

Tennessee Gas Pipeline appeals from an order of the district court enforcing an arbitration award. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Anderman/Smith Operating Company ("Anderman") is a Colorado corporation which represents various sellers of natural gas produced from wells located in northwestern Alabama. Tennessee Gas Pipeline Company ("Tennessee") operates a pipeline service which purchases natural gas from various producers, including Anderman. In April 1982 Anderman and Tennessee entered into a Gas Sales and Purchase Agreement, which, among other things, determines the price that Tennessee pays for the gas it takes from Anderman and establishes various methods by which that price can be adjusted.

In early 1988 a dispute arose as to the price Tennessee was required to pay for Anderman's gas. The dispute prompted Anderman to file an action in federal district court; Tennessee responded by invoking an arbitration provision in the parties' agreement. Accordingly, the federal action was stayed, and the dispute was sub-

mitted to a panel of arbitrators.[1] After a hearing, the panel rendered a decision in favor of Anderman. Tennessee refused to comply with the arbitrators' award, and Anderman applied for an order confirming the award from the federal district court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9, 10. The district court confirmed the arbitrators' award, and Tennessee appeals.

## II. DISCUSSION

### A. The Dispute Before the Arbitrators

Because the price of natural gas fluctuates, Tennessee and Anderman agreed to include in their contract various provisions allowing either or both of them to adjust the price of Anderman's gas over the life of the contract. The dispute before the arbitrators concerned the contractual provisions which establish the parties' respective rights to adjust the price. One of those provisions, § 10.4 of the contract, sets forth Tennessee's right to adjust the price by a procedure called "market out." Section 10.4 provides that when, in Tennessee's sole judgment, the price it is paying for Anderman's gas is too high to allow Tennessee to remain competitive in its end use markets, Tennessee may nominate a new price for the gas. To implement this provision, the contract provides that

> [Tennessee] shall give [Anderman] written notice ... setting forth the cause and details of [Tennessee's] nomination of a new price and price computation method to be effective ninety (90) days after the date of [the] notice. During the first sixty (60) days following the date of [the notice], [Anderman] may solicit bona fide offers from other purchasers for the gas....

Contract § 10.4. If Anderman receives better offers for its gas from another purchaser or purchasers, Tennessee must either match those offers or release Anderman's gas from the contract. If Anderman does not receive any better offers, then the price nominated by Tennessee becomes effective.

Another provision of the contract allows Anderman to initiate an adjustment of the price of the gas. That provision establishes a process called "price redetermination" which allows Anderman, no more frequently than once every three months, to change the method for calculating the price for its gas. Anderman may choose either of two alternative methods, both of which are set out in the contract and are pegged to some market price for natural gas or fuel oil. Contract § 10.2.

The primary issue before the arbitration panel was to determine what the price of the gas should be. The panel was also presented, though, with important questions concerning the relative rights of the parties to adjust the price of gas in the future. Among others, these questions included:

1) whether Anderman must first invoke its right to a "price redetermination" before Tennessee can "market out,"

2) if Tennessee markets out, whether it can do so again if Anderman has not requested a price redetermination in the meantime, and

3) whether the price paid by Tennessee has to be uncompetitive for Tennessee's end-use markets before Tennessee can market out.

The arbitrators rendered a decision and fashioned remedies which resolved all of the issues before them. First, the panel set a price for the gas, and determined that that price should remain in effect for 12 months. Second, the arbitrators decided that any future price adjustments would have to be approved by the arbitration panel before becoming effective. Finally, the arbitrators decided that while Tennessee did not need to do so in its initial "market out" price adjustment, in any later request to "market out" Tennessee would first have to establish by a preponderance of the evidence that the existing price was too

---

1. As provided by their agreement, each party named one member of the panel, and the court named the third. Tennessee named R. Clyde Hargrove as its arbitrator, Anderman/Smith named Robert K. Pezold, and the court appointed the Honorable James P. Coleman, a former Chief Judge of the Fifth Circuit, as the third member of the panel.

high to allow Tennessee to compete in its end use markets.

### B. *Tennessee's Objections to the Arbitrators' Award*

Tennessee raises two principal objections to the award. First, Tennessee contends that the arbitrators ignored or deleted an express provision of the contract in deciding that before it could market out, Tennessee would have to demonstrate that the existing price was uncompetitive by a preponderance of the evidence. Second, Tennessee contends that the arbitrators' decision is invalid because it fashions a remedy—setting a price for a year, and requiring future price changes to be approved by the panel—which exceeds the arbitrators' authority. Neither of these arguments provides a sufficient basis for this Court to vacate the arbitrators' award.

■■■ The standard of review of an arbitration award is well settled. The federal courts will defer to the arbitrators' resolution of the dispute whenever possible. The Congressional policy of promoting arbitration requires that courts do not intrude unnecessarily into questions that have been settled by an arbitration process agreed to by the parties, lest the efficiency of the arbitration process be lost. Thus, "[j]udicial review of arbitration awards is extremely limited," *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Ben. Ass'n,* 889 F.2d 599, 602 (5th Cir.1989); "[j]udicial review of an arbitration award is extraordinarily narrow and this Court should defer to the arbitrator's decision when possible." *Antwine v. Prudential Bache Sec., Inc.,* 899 F.2d 410, 413 (5th Cir.1990).

■■■ The standard of review is thus a very deferential one. This Court must sustain arbitration awards even if it does not agree with the arbitrators' interpretation of the contract. The Supreme Court has held that as long as the arbitrator's decision "draws its essence" from the contract,

the award must be confirmed. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). *See also Delta Queen Steamboat Co.,* 889 F.2d at 602; *HMC Management Corp. v. Carpenters Dist. Council of New Orleans & Vicinity,* 750 F.2d 1302, 1304.[2] To draw its essence from the contract,

> an [arbitrator's] award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the ... agreement.... [T]he award must, in some logical way, be derived from the wording or purpose of the contract.

*Local Union 59, Int'l Bhd. of Elec. Workers v. Green Corp.,* 725 F.2d 264, 268 (5th Cir.) (quoting *Brotherhood of R.R. Trainmen v. Central of Georgia Ry. Co.,* 415 F.2d 403, 412 (5th Cir.1969)), *cert. denied,* 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984). Keeping this highly deferential standard of review in mind, we turn to the objections to the arbitrators' award raised by Tennessee.

### 1. The Arbitrators' Construction of Tennessee's Right to "Market Out"

■■■ There can be no question that the arbitrators' decision in this case meets the minimal standard of review applicable to arbitration awards. The award is, in every respect, "rationally inferable" from the letter and purpose of the parties' contract.

The contract initially set a price between the parties, and provided that the price would be subject to adjustment from time to time, in order to account for changes in the market price of natural gas. The parties granted each other reciprocal rights to adjust the price of the gas. Tennessee maintains that its right to market out must be read to be unlimited and absolute—exercisable in its "sole judgment."

The arbitrators disagreed. They read the contract to impose a requirement that Tennessee must demonstrate, by a prepon-

---

**2.** This Court need not be so deferential to the district court's judgment. When a party challenges an arbitrator's award as exceeding the bounds of the underlying contract, as Tennessee

does here, this Court will review *de novo* the district court's order confirming the arbitration award. *Delta Queen Steamboat Co.,* 889 F.2d at 602.

derance of the evidence, that the existing price was so high that Tennessee could not remain competitive in its end use markets. Such a reading of the contract is certainly rationally inferable from the letter and purpose of the contract. As noted above, the contract requires that before Tennessee can market out it must give Anderman written notice of its intention to market out, and include with that notice a statement of the cause for marketing out, and the details of Tennessee's nomination of a new price. Contract § 10.4. The arbitrators' decision amounts to no more than a construction of the language of § 10.4 which requires Tennessee to demonstrate the truth of its statements about why it seeks to market out.

Moreover, the arbitrators decided that the interpretation of the contract offered by Tennessee would render the contract "over reaching and unenforceable." The arbitration panel clearly acted within the scope of its authority by reading the contract to avoid a result which would impute to the contract an unconscionable bargain.[3]

■ In sum, the arbitration award is rationally inferable from the language and purpose of the contract, and therefore must be confirmed by this Court. Indeed, even if this Court would have interpreted the contract differently, the standard of review of arbitration awards requires it to defer to the arbitrators' interpretation of the contract. The parties bargained for an arbitration process which would determine facts and construe disputed contract provisions; there is no injustice in holding the parties to their bargain. *See Manville Forest Prod. Corp. v. United Paperworkers Int't Union,* 831 F.2d 72, 74 (5th Cir. 1987). Indeed, Tennessee deliberately availed itself of the contract's arbitration provisions when it instituted the arbitration proceedings it now contests.

### 2. The Remedy Fashioned by the Arbitrators

■ Tennessee also objects to the remedy fashioned by the arbitrators—setting a price for one year, and requiring any future price changes to be approved by the arbitration panel. Tennessee argues that the arbitration panel had no authority to set a price for 12 months, because the contract gives Tennessee the right to market out whenever it wishes, and that the arbitrators had no basis on which to extend their authority to require that future price adjustments be brought before the panel. Neither of these arguments is well founded.

Tennessee acknowledges that arbitrators have traditionally enjoyed broad leeway to fashion remedies. *See, e.g., Totem Marine Tug & Barge, Inc. v. North Am. Towing,* 607 F.2d 649, 651 (5th Cir.1979). Here, the remedy chosen by the arbitration panel was entirely appropriate: If Tennessee's narrow interpretation of the arbitrators' powers were correct, any award rendered by the arbitrators would be virtually meaningless. No matter what the arbitration panel

---

**3.** Tennessee makes much of the language used by the arbitrators in reaching this conclusion. The arbitrators explained that "[w]e are unable to concur" in the portion of § 10.4 which allows Tennessee, in its sole judgment, to nominate a new price. Tennessee contends that the arbitrators' language indicates that they expressly deleted or ignored a provision of the contract, and that their award is therefore invalid.

Tennessee's argument fails for several reasons. First, it is clear that the arbitrators did not delete or ignore the provision of the contract that grants Tennessee the right to market out. Tennessee retains that right. While the arbitrators did construe the scope of Tennessee's right more narrowly than Tennessee would construe it—Tennessee argues that the contract grants it an unlimited right to market out in its "sole judgment"—the decision of the arbitrators

that Tennessee's rights were not that broad is precisely the sort of issue of contract interpretation that an arbitration scheme is designed to resolve.

Second, this Court does not review the language used by, or the reasoning of, the arbitrators in determining whether their award draws its essence from the contract. This Court looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract. *See Local Union 59, Int'l Bhd. of Elec. Workers v. Green Corp.,* 725 F.2d 264, 268 (5th Cir.), *cert. denied,* 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984). Indeed, arbitrators are generally not even required to disclose or explain the reasons that underlie their decision. *See, e.g., Antwine,* 899 F.2d at 412.

decided, under Tennessee's reading of the contract, either party would have the right to initiate a price adjustment immediately after the award was entered. Certainly the arbitration panel had authority to decide that for a limited period neither party would be able to change the price set by the arbitrators, in order to protect the integrity of the arbitration procedure established by the parties.

 As to the portion of the arbitrators' award which requires that any future price adjustments must be approved by the arbitration panel, this Court finds no infirmity in the arbitrators' award. The arbitrators' resolution of the disputed contract terms requires Tennessee to demonstrate by a preponderance of the evidence that the existing price of the gas prevents Tennessee from competing in its end use markets. Plainly, such a resolution of the dispute between the parties requires that someone pass on whether Tennessee has met its burden. That someone is not specified in the contract. It was entirely proper, and in keeping with the flexible, informal nature of arbitration, for the arbitration panel to resolve this problem before it arose by establishing a forum which could determine whether Tennessee had established that it was entitled to market out. *See, e.g., Proodos Marine Carriers Co. v. Overseas Shipping & Logistics,* 578 F.Supp. 207, 212 (S.D.N.Y.1984) (where a

long term contract contains a broad arbitration clause, and disputes are submitted to and resolved by an arbitration panel selected in accordance with the contract, it is proper for that panel to remain in office to resolve later disputes arising under the contract). There is no basis for this Court to invade the arbitrators' resolution of the dispute.[4]

### III. CONCLUSION

The judgment of the district court is affirmed; the arbitrators' award is confirmed.

**AFFIRMED.**

---

**4.** Tennessee's arguments that the arbitration panel has impermissibly extended its authority are without merit. First, Tennessee argues that since the contract provides that the arbitrators must render a decision within 60 days of the appointment of the third arbitrator, the arbitration panel has no authority to act after those 60 days. Tennessee confounds two separate aspects of the arbitrators' function: one is to resolve the parties' dispute within sixty days, and the other is to fashion an appropriate remedy. It is one thing to say that an arbitration panel which renders no decision within sixty days loses its authority to act; it is another thing altogether to say that the panel cannot impose any remedy which remains in effect for more than sixty days. Here it is clear that the panel acted within sixty days to resolve the dispute. That the remedy it imposed will continue for more than sixty days does not render the panel's decision—or the remedy—invalid.

Indeed, if Tennessee's position were correct, any decision of the arbitrators would expire after sixty days; the arbitrators' interpretation

of a disputed contract provision, for instance, would have force only for sixty days, and after that period the dispute between the parties would re-arise. Such a position is plainly untenable.

Tennessee also argues that the arbitrators' continuing authority is barred by the doctrine of *functus officio*. That doctrine is designed to prevent an arbitrator from revisiting an award; it protects the finality of an arbitrator's decision. *See, e.g., Proodos Marine Carriers,* 578 F.Supp. at 211. The doctrine has no application here. The arbitration panel has not attempted, and there is no indication that it will attempt, to alter the decision it has rendered. It has retained authority solely for the limited purpose of passing on future price adjustments. Thus, although the price of gas under the contract may and probably will change, the arbitration panel's construction of the contract will not change. Accordingly, the evil to be avoided by the *functus officio* doctrine is not present here, and that doctrine is no barrier to the remedy adopted by the arbitrators.