LAY, Circuit Judge,
dissenting.
I respectfully dissent.
There should be little dispute federal district courts possess limited resources to deal with the tremendous volume of cases filed before them. Our entire judicial system faces constant pressure to expedite our deci-sional process. Every district judge is challenged through self-education, seminars, and bench books to acquire skills to shorten trials and make expedited decisions. Certainly, one of the more practical shortcuts in pending litigation is for counsel to define the issues the court must decide. The pretrial discovery process is designed to do just that. As clients must rely on the professionalism of their selected lawyers as agents, judges must rely upon counsel to define the issues the *185 courts must decide. After all, the lawyers are the ones who have prepared the cases, filed briefs on both factual and legal issues, and are much more knowledgeable of what the case submitted is about.
In the present case, the experienced trial judge followed that procedure in making inquiry of the lawyers: What are the issues before me? The parties submitted their respective briefs and defined the scope of the arbitrator’s authority. Relying on HL & P’s brief, the trial judge found that the arbitrator did nothing more than what HL & P stated the arbitrator had a right to do. In ruling for the Union, the district judge wrote:
The submitted issue in the arbitration was whether or not the Company had violated the collective bargaining agreement by laying off Thomal out of line of seniority. The arbitrator found that the Company had violated the agreement and ordered Thomal’s reinstatement. Indeed, Plaintiff states in its brief “The arbitrator’s sole function is to determine whether the Union or UFI [now HL & P] was correct in deciding that Thomal was less qualified than the junior employees whom UFI retained over him.” This is exactly what the arbitrator did.
Houston Lighting & Power Co. v. The Int’l Bhd. of Elec. Workers, Local No. 66, No. H-94-908, at 2 (S.D.Tex. Aug. 25, 1994).
The majority now rejects the district court’s reliance on HL & P’s brief by saying “[i]n the interest of justice, we are reluctant to rely upon what appears to be an obvious misstatement by counsel to support a decision which is adverse to that counsel’s client.” Ante at 183, n. 4. This overlooks, however, the fact that HL & P previously defined the issue to the arbitrator in similar terms: “[djid the Company unreasonably and unjustly discriminate against Grievant by terminating him while retaining less senior heavy equipment operators?” (R. at 16.) The district court reasonably relied upon HL & P’s counsel’s definition of the issues and I find such reliance reasonable. I would affirm the district court based upon HL & P’s refinement of the issue. To do otherwise, I respectfully submit, undermines the authority of the district court and creates uncertainty as to whether district courts may rely upon counsel’s statement of issues in order to shorten proceedings.[1]
I respectfully submit the majority also errs in faulting counsel. HL & P’s brief defined the scope of the arbitrator’s authority to the district court in the manner that it did because the terms of the collective bargaining agreement required it to do so. HL & P’s exclusive right to determine its operating policies must be read in conjunction with Article IV, Section 7, which provides in the event of layoffs, “where ability, skill and qualifications are equal, length of service at that facility shall govern_ The Company shall determine ability, skill and qualifications, subject to an employee’s right to assert a grievance under Article II.” (R. at 24.) (emphasis added). Article II, Section 1, defines a grievance as “any dispute involving the proper application or interpretation of this Agreement, or a claim that an employee has been unreasonably and unjustly discriminated against.” (R. at 28.) (emphasis added). Finally, Article II, Section 4, provides that “[t]he sole function of the arbitrator[] shall be to determine whether the Company or Union is correct with reference to the proper application and interpretation of this Agreement.” (R. at 27.) (emphasis added). Thus, the arbitrator was expressly authorized by the terms of the agreement, and by the submission of the parties, to determine whether HL & P was correct in deciding that Thornal was less qualified than the junior employees whom HL & P retained over him.
*186 The arbitrator found HL & P’s evaluation process was facially valid, but he then focused specifically on its application to Thor-nal. Although previously accepting HL & P’s evaluation scheme of “relative ability” as being legitimate, he found that the “decision to terminate the Grievant while retaining Trammel [the other employee with less seniority] ... was [not a] reasonable one.” (R. at 4.) In disagreeing with the supervisor’s evaluation of Thornal, the arbitrator found that HL & P did not give him a fair appraisal. Based upon the record before him, the arbitrator found that Thornal should have received the same credit for low absenteeism as was assigned another employee, Trammel. He also found that Trammel should have been awarded credit for having trained others as was given to another employee, Dillard.[2] Thus, the arbitrator found that HL & P failed to fairly apply the terms of the collective bargaining agreement in that Thor-nal was equal in ability, skills and qualifications and yet another employee with less seniority was retained.
Although-HL & P urges that it had the exclusive right to determine Thornal’s ability, skill and qualification, it is also true that the plain terms of Article IV, Section 7 subjects that determination to the grievance procedure within the collective bargaining agreement. It is clear from the terms of the agreement to which HL & P agreed that HL & P’s determination was subject to review through the grievance machinery. The grievance provision of Article IV, Section 7 simply cannot be ignored.
The arbitrator’s explicit language recognizes the precise authorization he was following in deciding the grievance proceeding. In granting the award he wrote “[h]aving found that the Company acted unreasonably and unjustly in the manner that it applied its layoff evaluation process to the Grievant, it was not justified in laying off the Grievant out of line with his seniority while retaining employees with less seniority. Accordingly, the grievance is sustained.” (R. at 2.) (emphasis added).
In United Paperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987), the Court observed, “[A]s long as the arbitrator is ... acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” While a court may review whether an arbitrator has exceeded his scope of authority, it must resolve all doubts in favor of the arbitrator’s authority. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960). HL & P’s challenge to the arbitrator’s methodology of analysis slights this court’s opinion in Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co., 918 F.2d 1215 (5th Cir.1990). There Judge Johnson observed:
[ T]his Court does not review the language used by, or the reasoning of, the arbitrators in determining whether their award draws its essence from the contract. This Court looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract. See Local Union 59, Int’l Bhd. of Elec. Workers v. Green Corp., 725 F.2d 264, 268 (5th Cir.), cert. denied, 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984). Indeed, arbitrators are generally not even required to disclose or explain the reasons that underlie their decision. See, e.g., [Antwine v. Prudential Bache Sec., Inc., 899 F.2d 410, 412 (5th Cir.1990)].
Id. at 1219 n. 3.
The majority observes “[t]he Company has the exclusive right to make the employee qualification determinations. Nowhere in the Agreement does it state that re-determination shall be made by the arbitrator. If the arbitrator had found that the evaluation process was not consistent with the Agree *187 ment, then the Arbitrator should remand the matter to the Company so that the Company can make the re-determination of the employee’s qualifications under another valid process.” Ante at 184. Thus, the majority appears to support HL & P’s additional claim that the arbitrator did not have the authority to provide the remedy of reinstatement and the award of back pay. It is well settled that “courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on error of fact or on misinterpretation of the contract.” See Misco, 484 U.S. at 36, 108 S.Ct. at 870 (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)).
It is established law “that though the arbitrator’s decision must draw its essence from the agreement, he ‘is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies’ ” Id. at 41, 108 S.Ct. at 372 (emphasis in original, quoting Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. at 1361).[3]
As the Court reminded us in Enterprise Wheel:
When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.[4]
363 U.S. at 597, 80 S.Ct. at 1361.
On the basis of the above analysis, I would think it clear that the arbitrator’s opinion drew his decision from the essence of the collective bargaining agreement.
I would affirm the judgment of the district court.

. In a habeas corpus case, Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Court observed that "[a]ttoraey ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.’ " Id. at 753, 111 S.Ct. at 2566-67 (citing Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). In Coleman, the Court cites Link v. Wabash R.R., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390-91, 8 L.Ed.2d 734 (1962) and Irwin v. Department of Veterans Affairs, 498 U.S. 89, 92, 111 S.Ct. 453, 455-56, 112 L.Ed.2d 435 (1990), stating that in "our system of representative litigation ... each party is deemed bound by the acts of his lawyer-agent." Id. at 753, 111 S.Ct. at 2567.

. The arbitrator made a detailed objective analysis of HL & P’s evaluation of other less senior employees in contrast to ThomaTs rating. For example, two employees, Payne and Trammel, received + 2 points for lack of absenteeism whereas Trammel had an excellent attendance record and received zero points. Based upon this exacting analysis, it is little wonder the arbitrator found that as to Thornal the supervisor arbitrarily discriminated against him by “deliberately and unreasonably” depriving him of the necessary points to reach an "average” rating. (R. at 5.)

. The Company protests the arbitrator’s reference to his knowledge of "grievances in the federal public sector" where once a job rating is set aside, the arbitrator then orders the appraisal rating that he deems appropriate. Thus, the Company urges that the arbitrator is going outside the collective bargaining agreement to make its findings. This colloquy by the arbitrator, in my judgment, simply explains the remedy by which the arbitrator orders the Grievant reinstated. The remedy lies exclusively within the arbitrator's judgment and his analogy to the remedy he has invoked in federal sector cases does not violate his authority. As the Supreme Court explained in Warrior & Gulf
The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law — the practices of industry and the shop — is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties’ confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment.
363 U.S. at 581-82, 80 S.Ct. at 1352.

. Equally relevant is the Supreme Court's additional observation:
The collective bargaining agreement could have provided that if any of the employees were wrongfully discharged, the remedy would be reinstatement and back pay up to the date they were returned to work. Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator’s decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator’s decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to in United Steelworkers of America v. American Manufacturing Co., [363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)], decided this day. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator’s construction which was bargained for; and so far as the arbitrator’s decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
Id. at 598-99, 80 S.Ct. at 1361-62.