United States Court of Appeals
Fifth Circuit

**F I L E D**

June 28, 2007

Charles R. Fulbruge III
Clerk

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 05-11118

HCC AVIATION INSURANCE GROUP, INC;
UNIVERSAL LOSS MANAGEMENT INC

Petitioners - Appellants

v.

EMPLOYERS REINSURANCE CORPORATION

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas, Dallas
No. 3:05-CV-744

Before KING, GARZA, and PRADO, Circuit Judges.

KING, Circuit Judge:[*]

Petitioners-appellants HCC Aviation Insurance Group, Inc. and Universal Loss Management Inc. appeal the district court's vacatur of an arbitration award in their favor. For the reasons that follow, we REVERSE.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A 1996 airplane crash in West Virginia spawned a series of lawsuits that give rise to this appeal. David Board operated a flight-instruction school in West Virginia. One of Board's students was injured in an airplane crash during a training flight on July 16, 1996.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The injured student pilot sued Board in West Virginia state court for his personal injuries. Board was insured under a commercial general liability policy through Ranger Insurance Company ("Ranger"). Board filed a claim with Ranger, seeking both indemnification and defense in the action against him.

Prior to Board's filing of a claim, Ranger and petitioner-appellant HCC Aviation Insurance Group, Inc. ("HCC Aviation") had entered into a Management Agreement, dated July 1, 1992, whereby HCC Aviation would underwrite and service the West Virginia aviation policies issued in Ranger's name.[1] HCC Aviation's subsidiary, petitioner-appellant Universal Loss Management, Inc. ("Universal"),[2] was HCC Aviation's claims-handling facility and processed the claims on the Ranger policies that HCC Aviation underwrote.

Universal processed the claim that Board had submitted under his policy with Ranger and denied it pursuant to an exclusion in Board's policy. But a West Virginia state court later determined that Board's claim was covered under his policy and that Ranger therefore should have indemnified and defended him. Board and the student pilot then filed a separate action against Ranger for insurance bad faith for failing to defend and indemnify Board. This bad-faith action was settled for $4.3 million.

Ranger's reinsurer, respondent-appellee Employers Reinsurance Corporation ("Employers Reinsurance"), funded the settlement payout. Ranger's reinsurance coverage with Employers Reinsurance was detailed in a General Aviation, Agricultural Aviation and Airport Liability Quota Share Reinsurance Agreement ("Reinsurance Agreement") dated October 1, 1994. Article 13 of the Reinsurance Agreement, titled "Extra-Contractual

---

[1] The parties to the Management Agreement were actually Ranger and Signal Aviation Underwriters, Inc. ("Signal"). HCC Aviation is Signal's successor in interest. For the sake of convenience, we refer to HCC Aviation throughout this opinion even where it was Signal that acted.

[2] The subsidiary was actually Underwriter's Adjustment Bureau, Inc. ("UAB"). Universal is UAB's successor in interest. Again, for the sake of convenience, we refer to Universal throughout this opinion even where it was UAB that acted.

Obligations," provided coverage for wrongful denial of claims under Ranger's policies.[3] It was pursuant to Article 13 of the Reinsurance Agreement that Employers Reinsurance funded the settlement of the bad-faith action against Ranger for Universal's wrongful denial of Board's claim.

In an effort to recover its payout of the $4.3 million settlement, Employers Reinsurance brought an action in West Virginia state court in 2001 against HCC Aviation and Universal alleging that it was their negligence that caused Ranger's wrongful denial of Board's claim. Ranger was also a plaintiff in this action. Employers Reinsurance and Ranger asserted two pertinent claims.[4] First, they alleged that HCC Aviation and Universal's conduct in denying Board's claim constituted a breach of the Management Agreement between Ranger and HCC Aviation. Although Employers Reinsurance was not a party to the Management Agreement, it asserted the claim for breach of this agreement as Ranger's subrogee. Second, they alleged that under the Reinsurance Agreement, HCC Aviation and Universal owed Employers Reinsurance "an implied duty of the utmost good faith" and that their conduct in denying Board's claim violated this duty.

HCC Aviation and Universal moved to dismiss Employers Reinsurance's suit in the West Virginia state court for failure to state a claim upon which relief can be granted. With respect to Ranger's claims, HCC Aviation and Universal argued that the complaint specified that the claims belonged to Employers Reinsurance, not Ranger, and that there was no basis for Ranger to recover. With respect to Employers Reinsurance's claims, HCC Aviation and

---

[3] Article 13 provides: "This Agreement shall include losses in respect of Extra-Contractual Obligations . . . paid by the Company for . . . damages . . . arising out of the conduct of the Company in the investigation, trial or settlement of any claim or failure to pay or delaying in payment any benefits under any policy." "Company" was defined as "[Ranger] and/or any affiliate, subsidiary or substitute and/or any other policy issuing company for [HCC Aviation] but only in respect of business underwritten by [HCC Aviation] (Manager)."

[4] The suit also contained legal-malpractice claims against Ranger's counsel for permitting a default judgment to be obtained against Ranger in the bad-faith-insurance action. The malpractice claims are not pertinent to this appeal.

3

Universal contended, inter alia, that they were insured parties under the Reinsurance Agreement, even though Universal was not a signatory to the agreement. They argued that Employers Reinsurance agreed to provide coverage in Article 13 of the Reinsurance Agreement for HCC Aviation's claims-handling facility. Consequently, they asserted, Employers Reinsurance could not recover from them because an insurer has no legal right to reimbursement from its own insured or from any person whose risk-producing conduct was borne by the insurer in the insurance contract.

In an order dated July 29, 2002, the West Virginia trial court dismissed certain claims and permitted others to proceed. The court dismissed all of Ranger's claims against both HCC Aviation and Universal. As to Employers Reinsurance's claim for breach of the Management Agreement, the court dismissed the claim against Universal because Universal was not a party to the Management Agreement, but the court permitted the claim against HCC Aviation to proceed:

> The claim of [Employers Reinsurance] for Breach of Management Agreement may be maintained against HCC [Aviation], but not against [Universal], as [Universal] was the agent of HCC [Aviation], but not a party to the agreement. HCC [Aviation] will be responsible for acts that [Universal] committed while acting within the scope of its authority for HCC [Aviation].

As to Employers Reinsurance's claim for breach of the duty of good faith under the Reinsurance Agreement, the court denied the motion to dismiss vis-à-vis both HCC Aviation and Universal:

> This Court is frank to say that it is not conversant with the concept of "utmost good faith." The Plaintiff, [Employers Reinsurance], does make a good case for the application of "utmost good faith" as it applies to a reinsured and agents of a reinsured, and the concomitant duty to the reinsurer.

> The Court cannot accept the proposition that [Universal] is a party under the [Reinsurance] Agreement just because it is an agent of HCC [Aviation].

4

> The Court finds that [Employers Reinsurance] is entitled to present a case for equitable subrogation as to [Universal]. . . .
>
> The Court also finds that [Employers Reinsurance's] claim against [Universal] for "Negligent Claims Handling" should not be dismissed.

On December 2, 2002, the West Virginia trial court issued an order staying the proceedings for binding arbitration pursuant to arbitration clauses in both the Reinsurance Agreement and the Management Agreement. The court ordered "[a]ll the legal and equitable claims remaining between the parties as ordered, adjudged, and decreed by [the] Court's Order dated July 29, 2002, [to] be stayed and submitted to one arbitration panel for binding arbitration."

The parties exchanged correspondence prior to arbitration concerning the scope and terms of the arbitration. Employer Reinsurance's May 28, 2003, letter to HCC Aviation and Universal's counsel described the scope of the arbitration as follows:

> All legal and equitable claims remaining between the parties set forth in the West Virginia Court's Order dated July 29, 2002 will be subject to binding arbitration. These issues include whether HCC [Aviation]/[Universal] was negligent in their claims handling of the [Board claim], whether the Management Agreement was breached, and whether HCC [Aviation]/[Universal] breached its duty of utmost good faith to [Employers Reinsurance], the reinsurer.

All three entities—Employers Reinsurance, HCC Aviation, and Universal—participated in the arbitration proceedings in Dallas, Texas. HCC Aviation and Universal argued to the arbitration panel that, inter alia, Employers Reinsurance could not seek reimbursement from them because their conduct was insured under Article 13 of the Reinsurance Agreement. Employers Reinsurance maintained that the West Virginia court had already ruled that coverage was unavailable under Article 13 and that the panel was bound by this determination as the law of the case.

The arbitration panel denied Employers Reinsurance's claims in a Final Award dated April 8, 2005. The panel concluded that "[i]t was the original intent of the [p]arties to

include the claims handling facilities of [HCC Aviation]," i.e., Universal, "under the extra-contractual obligations (ECO) coverage provided under ARTICLE 13 of the . . . REINSURANCE AGREEMENT." Consequently, Employers Reinsurance was obligated to fund the settlement of the bad-faith action and could not recover against HCC Aviation and Universal.

HCC Aviation and Universal filed a petition to confirm the arbitration award in the Northern District of Texas, and Employers Reinsurance filed a motion to vacate the award. The district court vacated the arbitration award, concluding that the arbitration panel exceed its authority by reaching the issue of coverage under Article 13 for Universal's conduct. The district court reasoned that "[b]y necessary implication, the [West Virginia court's] July 29, 2002 Order holds that coverage under Article 13 is unavailable to [Universal]," and that "[i]n light of the trial court's implicit conclusion, the indemnification argument should not have been revisited by the arbitration panel." The district court also concluded that in their pre-arbitration correspondence, "the parties agreed" that "[Universal's] indemnification argument under Article 13 . . . would not be revisited in arbitration." Consequently, the district court vacated the arbitration award and remanded the case "to the arbitration panel to consider those issues properly before it pursuant to the [West Virginia] Court's July 29, 2002 [order] and the parties' correspondence." HCC Aviation and Universal now appeal the district court's vacatur of the arbitration award.[5]

---

[5] We asked the parties to address in their briefs the question "[w]hether the order from which appeal is taken, vacating the arbitration award and denying petition to confirm arbitration, is a final decision which is immediately appealable under the Federal Arbitration Act, 9 U.S.C. § 16(a)(3) or otherwise." Section 16(a)(3) permits an appeal to be taken from "a final decision with respect to an arbitration that is subject to this title." Both sides assert that the order in this case is immediately appealable, even though the district court vacated and remanded the case to the same arbitration panel. We agree. *See* 9 U.S.C. § 16(a)(1) ("An appeal may be taken from . . . an order . . . (D) confirming or denying confirmation of an award or partial award, or (E) modifying, correcting, or vacating an award . . . ."); *Atl. Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994) ("The FAA does not distinguish between orders vacating arbitration awards without directing a rehearing and those orders which vacate awards and direct a rehearing of the arbitration dispute; both are appealable." (citing 9 U.S.C. § 16(a)(1)(E))); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 913-14 (3d Cir. 1994) (concluding that FAA permits appeal of order vacating arbitration award and remanding to same arbitration panel where remand is not for clarification but for "re-evaluation of the

## II. DISCUSSION

### A. Standard of Review

When reviewing a district court's vacatur of an arbitration award, we review the district court's factual findings for clear error and its legal conclusions de novo. *Hughes Training Inc. v. Cook*, 254 F.3d 588, 592 (5th Cir. 2001). The district court's order in this case was based entirely on legal conclusions; our review of the district court's order is therefore de novo.

Our review of the arbitration award itself, however, is "exceedingly deferential," just as "[a] district court's review of an arbitration award is extraordinarily narrow." *Kersogien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004). "We must sustain an arbitration award even if we disagree with the arbitrator[s'] interpretation of the underlying contract as long as the arbitrator[s'] decision 'draws its essence' from the contract." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994) (internal quotation marks omitted) (quoting *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990)). "In other words, we must affirm the arbitrator[s'] decision if it is rationally inferable from the letter or the purpose of the underlying agreement." *Id.* (quoting *Anderman/Smith*, 918 F.2d at 1218).

The district court vacated the arbitration award in this case on the ground that the arbitration panel exceeded its authority. The Federal Arbitration Act ("FAA") does provide for vacatur "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). But "[i]n deciding whether the arbitrat[ion] [panel] exceeded its authority, we resolve all doubts in favor of arbitration." *Executone Info. Sys.*, 26 F.3d at 1320 (citing *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993)).

---

entire controversy").

## B. Analysis

Employers Reinsurance asserts that the arbitration panel exceeded its authority when it decided that the parties to the Reinsurance Agreement intended Article 13's insurance coverage to extend to Universal.[6] Employers Reinsurance argues that the West Virginia court's orders and the parties pre-arbitration correspondence reflect that this issue was not submitted to the arbitration panel because the court had already decided it. It maintains that HCC Aviation and Universal argued to the West Virginia court in their motion to dismiss that Employers Reinsurance could not recover from Universal because Article 13 legally precluded its recovery under the principle that an insurer may not subrogate against its own insured. But, Employers Reinsurance posits, the West Virginia court implicitly ruled that Universal was not entitled to coverage under Article 13 when it ruled that Universal was not a party to the Reinsurance Agreement and permitted Employers Reinsurance's claim to proceed. Employers Reinsurance contends that this implicit conclusion was binding on the arbitration panel and that by re-addressing the issue and determining that Article 13 provided insurance coverage to Universal, the panel exceeded its authority.

We begin our analysis by examining the West Virginia court's orders and the parties' pre-arbitration correspondence. The July 29, 2002, order granted in part and denied in part HCC Aviation and Universal's motion to dismiss for failure to state a claim. The significance of this order is that it defined the universe of claims that were permitted to proceed. The court dismissed several claims, including all of Ranger's claims as well as Employers Reinsurance's claim against Universal for breach of the Management Agreement, but the court permitted the other claims to proceed. The claims that remained after this order were Employers Reinsurance's claim against HCC Aviation for breach of the Management Agreement and its claims against both HCC Aviation and Universal for breach of the duty of good faith arising from the Reinsurance Agreement.

---

[6] Employers Reinsurance does not contend here, as it did before the district court, that the arbitration panel manifestly disregarded the law.

In the December 2, 2002, order, the court submitted those remaining claims to binding arbitration.[7]  Likewise, the parties' pre-arbitration correspondence indicated that the scope of issues to be arbitrated consisted of the claims that remained after the July 29, 2002, order.[8] Nothing in the language of the December 2, 2002, order or in the parties' pre-arbitration correspondence indicates that the scope of arbitration was anything less than the entirety of the remaining claims.  Nothing in the documents indicates that the panel could not fully arbitrate the claims that were submitted to it, including the threshold question of whether Universal was entitled to invoke Article 13's coverage.  Employers Reinsurance subtly attempts to insert such language in the December 2, 2002, order by asserting that the court submitted only those "issues" remaining between the parties; but the order clearly submitted the remaining "claims," not merely the remaining "issues."  Moreover, although Employers Reinsurance's May 28, 2003, letter to counsel for HCC Aviation and Universal enumerated a list of issues to be arbitrated, which did not include the question of Universal's entitlement to coverage under Article 13, this list was clearly non-exclusive.[9]  And although subsequent correspondence between the parties indicated that HCC Aviation and Universal could not arbitrate counterclaims against Employers Reinsurance under Article 13 because the counterclaims were not raised in the West Virginia court (and therefore were not part of the remaining claims), the subsequent correspondence did not indicate that the question whether Universal was entitled to the benefit of Article 13 could not be arbitrated.

---

[7]  The order provided: "All the legal and equitable claims remaining between the parties as ordered, adjudged, and decreed by this Court's Order dated July 29, 2002, shall be stayed and submitted to one arbitration panel for binding arbitration."

[8] Employers Reinsurance's May 28, 2003, letter to counsel for HCC Aviation and Universal described the scope of arbitration as follows: "All legal and equitable claims remaining between the parties set forth in the West Virginia Court's Order dated July 29, 2002 will be subject to binding arbitration."

[9]  The letter provided: "These issues [to be arbitrated] include whether HCC [Aviation]/[Universal] was negligent in their claims handling of the [Board] matter, whether the Management Agreement was breached, and whether HCC [Aviation]/[Universal] breached its duty of good faith to [Employers Reinsurance], the reinsurer."  At one point in its brief, Employers Reinsurance attempts to alter the non-exclusive effect of this sentence by substituting the word "were" for the word "include."

Furthermore, contrary to Employers Reinsurance's proposed interpretation, we do not read the July 29, 2002, order as conclusively determining that Universal was not entitled to the benefit of Article 13. Instead, we read the order much more narrowly. The court simply determined that Universal was not a *party* to the Reinsurance Agreement and that Employers Reinsurance's claim therefore did not violate any rule barring an insurer from subrogating against a party to its own insurance contract. It was clear that Universal was not a signatory to the Reinsurance Agreement and was not mentioned by name anywhere in the agreement. But Employers Reinsurance had admitted that Universal was an agent of HCC Aviation, which was named in and was a signatory to the agreement. What the court determined in the order was that Universal's agency relationship with HCC Aviation did not necessarily make Universal a party to the agreement: "The Court cannot accept the proposition that [Universal] is a party under the [Reinsurance] Agreement just because it is an agent of HCC [Aviation]."

The court did not, however, go on to opine about whether Universal (even as a non-party to the Reinsurance Agreement) could invoke the benefit of Article 13 on some other basis. HCC Aviation and Universal argued to the West Virginia court that Employers Reinsurance could not both use the Reinsurance Agreement as the basis for alleging that Universal owed it a duty of good faith and at the same time deny Universal the benefit of Article 13 of the same agreement. Despite its conclusion that Universal was not a party to the Reinsurance Agreement, the court permitted the claim against Universal for a breach of a duty arising from that agreement to proceed. The court expressed no opinion about whether Universal, as a non-party, could use a provision of that agreement, namely Article 13, as a defense to the claim. Instead, the court simply observed that Universal was not a party to the agreement, it permitted Employers Reinsurance "to present a case for equitable subrogation as to Universal," and it declined to dismiss Employers Reinsurance's claim against Universal for negligent claims handling.

Even if our reading of the court's order is incorrect and the court did conclude that Universal was not entitled to invoke the benefit of Article 13, the arbitrators still did not

exceed their authority. The court's order granting in part and denying in part the motion to dismiss for failure to state a claim was interlocutory. The court could have reconsidered its prior resolution of legal issues at any point in the litigation before issuing a final judgment. *See* W. VA. R. CIV. P. 54(b) ("[A]ny order . . . which adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."). There is no basis for concluding that the arbitration panel could not also have done so once the court referred the claims in their entirety to it.[10] This is especially true given that the arbitration panel was able to consider the scope of Article 13's coverage on a more complete record than that which was available to the West Virginia court at the motion-to-dismiss stage. The arbitration panel heard evidence regarding the parties' intent in drafting the Reinsurance Agreement, which the West Virginia court could not have considered without converting the motion to dismiss into a motion for summary judgment.[11] *See* W. VA. R. CIV. P. 12(b).

---

[10] Employers Reinsurance relies on *John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers, AFL-CIO & CLC* (*Morrell I*), 708 F. Supp. 273 (D.S.D. 1989), *aff'd*, 913 F.2d 544 (8th Cir. 1990) (*Morrell II*), for the proposition that an arbitration panel must respect a court's prior ruling on a particular claim and is precluded from ruling differently. But Employers Reinsurance's characterization of *Morrell I*'s holding is specious at best. True, the *Morrell I* court vacated an arbitration award on the ground that the arbitrator exceeded the scope of his authority. 708 F. Supp. at 278. But the reason the court did so was not because the arbitrator's decision was contrary to the court's prior ruling but rather because the arbitrator decided an issue that the parties had not submitted to him. *See id.* at 275-77; *see also Morrell II*, 913 F.2d at 549-50 ("The district court vacated the award because it held that the arbitrator had exceeded his authority by deciding the issue of the legality of sympathy strikes since Morrell had not consented to arbitrate that issue."). As we have stated, we believe that the question whether Universal was entitled to the benefit of Article 13 was submitted to the arbitration panel.

[11] Employers Reinsurance's contention that the West Virginia court actually converted the motion to dismiss into a motion for summary judgment by considering the terms of the Reinsurance Agreement at the motion-to-dismiss stage is baseless. Under West Virginia law, a trial court's receipt of evidence outside the pleadings when considering a motion to dismiss requires conversion of the motion into one for summary judgment. *See Shaffer v. Charleston Area Med. Ctr.*, 485 S.E.2d 12, 17 (W. Va. 1997); W. VA. R. CIV. P. 12(b). But contrary to Employers Reinsurance's argument, the Reinsurance Agreement was not a matter outside the pleadings. Employers Reinsurance had attached a copy of the Reinsurance Agreement to its amended complaint as Exhibit B, and under West Virginia law, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." W. VA. R. CIV. P. 10(c).

Lastly, as we noted, the FAA embodies a "strong presumption in favor of arbitrability." *Kersogien*, 390 F.3d at 355 (quoting *Waverly Mineral Prods. Co. v. United Steel Workers of Am., AFL-CIO, Local No. 8290*, 633 F.2d 682, 684 (5th Cir. 1980)). "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Kersogien*, 390 F.3d at 355. Because, at the very least, there are significant doubts about whether either the West Virginia court's orders or the parties' pre-arbitration correspondence placed the issue of Universal's coverage under Article 13 outside the arbitrators' realm, the district court should have resolved these doubts in favor of arbitrability and confirmed the arbitration award.

## III. CONCLUSION

For the reasons stated, the district court's order granting Employers Reinsurance's motion to vacate the arbitration award and denying HCC Aviation and Universal's motion to confirm the award is REVERSED and the case REMANDED for entry of an order confirming the arbitration award.

GARZA, Circuit Judge, specially concurring:

This case turns on whether the July 29, 2002 order of the West Virginia state court decided that Universal could not rely on the coverage of the Reinsurance Agreement)) namely Article 13. Although the order states that Universal is not a party to the Reinsurance Agreement, it is not clear what legal conclusion was intended to be drawn from that fact.

What is clear is that the state court allowed Employer's Reinsurance to pursue its claim against Universal for "negligent claims processing." It is equally clear that Employer's Reinsurance brought this claim against Universal pursuant to the Reinsurance Agreement, as Count VII of the Amended Complaint filed before the state court. By doing so, the state court did not preclude the possibility that Universal was subject to liabilities under the Reinsurance Agreement. Therefore, the arbitration panel was free to decide that the state court did not preclude the possibility that Universal was subject to the coverage of the Reinsurance Agreement)) including Article 13. *See Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 355 (5th Cir. 2004) ("[I]n deciding whether the arbitrator exceeded his jurisdiction, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'") (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).