In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3542

BOEING COMPANY,

*Plaintiff-Appellant*,

*v.*

INTERNATIONAL UNION OF UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW), *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 2213—**Robert W. Gettleman**, *Judge*.

ARGUED FEBRUARY 23, 2010—DECIDED MARCH 18, 2010

Before BAUER, POSNER, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. This case is before us on Boeing's appeal from the denial by the district court of a challenge to an arbitration award in favor of the UAW. 9 U.S.C. §§ 9, 10. The appeal requires us to consider the interplay between ERISA, 29 U.S.C. §§ 1001 *et seq.*, and section 301 of the Labor-Management Relations (Taft-Hartley) Act, 29 U.S.C. § 185, in the context of arbitration.

Boeing had manufacturing facilities in Tulsa and McAlester, Oklahoma. The hourly employees were represented by the UAW, which had negotiated with Boeing a collective bargaining agreement that entitled employees who were laid off when or after they turned 50 and had at least ten years of service to retire from the company at age 55 with a Boeing pension, plus lifetime health insurance also paid for by the company.

In 2005 Boeing sold its Oklahoma facilities to a company now called Spirit Aerosystems. The company hired a number of the workers and when that happened Boeing deemed their employment with Boeing to have "terminated as a result of divestiture." Boeing transferred to Spirit's pension fund the assets in the former employees' retirement accounts and denied that it had any further pension or benefits obligations to them. It treated the workers who didn't receive jobs with Spirit as having resigned.

The union filed a grievance, charging that Boeing's refusal to treat the workers as if it had laid them off violated the collective bargaining agreement. The union sued to compel arbitration of its grievance; the suit was settled by Boeing's yielding to the union's insistence on arbitration.

A provision of the collective bargaining agreement states that a worker loses his seniority rights, which include the pension and health benefits provided in the Boeing ERISA plans, if his employment is "terminated" in any of 11 specified ways. (There is no suggestion that termination deprived the workers of rights that ERISA itself

makes nonforfeitable. 29 U.S.C. § 1053(a).) Divestiture of Boeing facilities, plant closure, and other possible characterizations of what Boeing did are not among the listed ways and the arbitrator ruled that therefore the workers retained their entitlement to Boeing pension and health benefits.

Boeing has no argument worth a second's pause that the arbitrator exceeded his authority in concluding that Boeing had violated the collective bargaining agreement by repudiating its obligations to the laid-off workers. Its only (barely) colorable complaint is about the relief that the arbitrator ordered. He directed the affected employees (some 150 to 200) to apply to Boeing's plan administrator for the benefits to which the plan entitled them, but he further ruled that should the plan administrator deny their benefits claims, either because it concludes that they're no longer participants in the plan because they were laid off by Boeing, or because of the transfer of plan assets to Spirit's pension fund, then Boeing must assume the plan's obligations to those workers minus any entitlement that they may have under their Spirit pension and health-insurance plans. The arbitration award gives the workers who didn't go to work for Spirit the same relief as those who did, except that the former have no Spirit benefits to deduct from Boeing benefits. We needn't discuss those workers separately.

Boeing argues that the relief ordered by the arbitrator violates ERISA because not only must a claim for ERISA benefits be submitted in the first instance to the plan

administrator—as indeed ordered by the arbitrator—but if the claim is denied, the claimant's only remedy is a suit under ERISA challenging the plan administrator's interpretation of the plan. Judicial review of that interpretation would be deferential, *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2347-48 (2008); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-15 (1989); *Call v. Ameritech Management Pension Plan*, 475 F.3d 816, 822 (7th Cir. 2007), provided the plan grants the administrator discretion to interpret it—as Boeing's plan does.

We'll assume that the plan administrator will deny the claims on the ground that the workers "terminated as a result of divestiture" ceased to be plan participants. The administrator is not a party to either the collective bargaining agreement or the arbitration and will not feel bound by either. So unless the arbitrator is authorized to require Boeing to provide the benefits to which the workers would be entitled had Boeing not violated the collective bargaining agreement, Boeing's consent to the arbitration will have proved to be illusory.

Arbitrators are authorized to order legally enforceable remedies for the violation of contracts that they're called on to enforce. *Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777, S.I.U.N.A., AFL-CIO*, 398 F.2d 735, 738 (7th Cir. 1968); *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1219-20 (5th Cir. 1990); *Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 955-56 (4th Cir. 1971); *Fairweather's Practice and Procedure in Labor Arbitration* § 15.IV, pp. 468-70 and n. 64 (4th ed., Ray J. Schoonhoven

ed., 1999); Marvin F. Hill, Jr. & Anthony V. Sinicropi, *Remedies in Arbitration* 42-48 (2d ed. 1991); David E. Feller, "The Remedy Power in Grievance Arbitration," 5 *Indus. Rel. L.J.* 128, 136-37 (1982). That is the difference between arbitration and mediation. If Boeing agreed to the arbitration with its fingers crossed—hoping to win but determined that the workers would get nothing if it lost—it committed a fraud of sorts on the arbitrator and the union.

The argument that ERISA forbade the arbitrator to order relief is frivolous. Suppose a plan administrator paid a plan participant's medical bill, the employer appropriated the money as it was en route to the payee, and the payee then billed the participant. The plan administrator, unless complicit in the employer's conversion, would not have to pay the second bill; but the plan participant could sue the employer for conversion of the money that the plan would have paid the medical provider had it not been for the employer's misconduct. This case is the same, except that the misconduct consisted of violating a collective bargaining agreement rather than committing the tort of conversion.

Or suppose that Boeing unlawfully confiscated all the plan assets and fired the plan administrator's entire staff, and as a result no plan participant could obtain benefits. Could not the participant sue Boeing directly and obtain a judgment? The implication of Boeing's position is that the answer is "no."

Boeing argues that the union should not be heard to complain about the workers' "termination as a result of

divestiture" because it did not object to the transfer to Spirit's pension fund of the Boeing retirement-plan assets allocable to those "terminated" employees who went to work for Spirit. But why should the union have objected? It doesn't care where the assets are, and therefore whether the workers are given their pensions and health benefits (when they reach 55) by the plan administrator or by Boeing—an extremely prosperous company well able to make up the difference between what these workers are owed under the plan and the lesser benefits they'll receive from Spirit.

Section 208 of ERISA, 29 U.S.C. § 1058, has been interpreted to require that a plan that transfers liabilities to another plan (Boeing's plan transferred liabilities to Spirit's plan because the workers hired by Spirit acquired rights under Spirit's pension and welfare plans) must transfer enough assets to ensure that participants (assuming some triggering event) would receive the same benefits the day after the transfer as they would have received the day before. *Systems Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1380 (D.C. Cir. 1998); *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 664-65 n. 4 (6th Cir. 1998); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1147 (3d Cir. 1993); *Bigger v. American Commercial Lines*, 862 F.2d 1341, 1344-45 (8th Cir. 1988). Boeing thus was obligated to transfer assets to Spirit's pension fund when it transferred liabilities. The union's objection is to the transfer of liabilities; and while it could have presented its objection in the form of a demand that Boeing bargain collectively over these and any other consequences of the sale of the plants, *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 677-

78 n. 15 (1981), it was equally entitled to follow the alternative route of grievance and arbitration.

Boeing's reply brief summarizes the company's position as follows: the arbitrator "award[ed] ERISA-covered benefits as a remedy for a violation of a collective bargaining agreement where *the collective bargaining agreement expressly vests the administrator of the plan with the exclusive authority to decide benefit claims pursuant to ERISA's claims resolution regime*" (emphasis added). Not so. The arbitrator awarded what amount to damages for breach of contract *measured* by the benefits of which the breach deprived the workers, who were third-party beneficiaries of the collective bargaining contract.

One imagines that Boeing's concern in making these desperate arguments is with having to pay lifetime health benefits to early retirees. For it and we now know how that commitment in the UAW's collective bargaining agreements with the Detroit automakers helped drive those companies to the brink of bankruptcy—and General Motors and Chrysler over the brink. But Boeing is stuck with the commitments that it negotiated with the union unless it can renegotiate them. It was not required to agree to provide lifetime benefits to workers represented by the UAW but it agreed to do so and must live with its decision.

AFFIRMED.